1   JONATHAN KURNIADI (S.B.N. 243627)
    THE JK LAW FIRM, A.P.C.
2   1150 Silverado Street, Suite 216
    La Jolla, California 92037
3   Tel: (858) 551-0090
    Fax: (858) 430-3152
4
    Attorney for Plaintiff
5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10
    MICHAEL BURROWS, an Individual.   )   CASE NO.: '07 CV 1567   BEN (WMc)
11                                    )
          Plaintiff,                  )
12                                    )   COMPLAINT FOR:
    v.                                )
13                                    )   1.   Violation of the Truth in Lending Act, 15
                                      )        U.S.C. § 1601 *et seq.*, and Federal Reserve
14                                    )        Regulation Z, 12 C.F.R. § 226 *et seq.*;
    ORCHID ISLAND TRS, LLC, successor )   2.   Violation of the Real Estate and Settlement
15  to OPTEUM FINANCIAL SERVICES,     )        Procedures Act, 12 U.S.C. §2601 *et seq.* and
    LLC;                              )        Federal Reserve Regulation X, 24 C.F.R. §
16                                    )        3500 *et seq.*;
    GOLDEN VALLEY LENDING GROUP,      )   3.   Violation of California Civil Code §§ 1920
17  INC., a California corporation;   )        and 1921;
                                      )   4.   Violation of the Unfair Competition Act,
18  FIRST NLC FINANCIAL SERVICES,     )        California Business and Professions Code §
    LLC, also known as THE LENDING    )        17200 *et seq.*;
19  CENTER;                           )   5.   Violation of the False Advertising Act,
                                      )        California Business and Professions Code §
20  CHRISTINE R. SMITH, an Individual; )       17500 *et seq.*;
                                      )   6.   Constructive Fraud, California Civil Code §
21  and DOES 1-25, inclusive,         )        1573;
                                      )   7.   Intentional Misrepresentation, California Civil
22        Defendants.                 )        Code §§ 1709 and 1710;
                                      )   8.   Concealment, California Civil Code §§ 1709
23                                    )        and 1710;
                                      )   9.   Negligent Misrepresentation, California Civil
24                                    )        Code §§ 1709 and 1710;
                                      )   10.  Violation of California Civil Code § 1711 –
25                                    )        Fraud on the Public;
                                      )   11.  Rescission/Cancellation, California Civil
26                                    )        Code § 1689 & Court's Inherent Equitable
27

28

---

**COMPLAINT ON PREDATORY LENDING AND ILLEGAL KICKBACKS**

)        Authority;
)    12.  Breach of Fiduciary Duty;
)    13.  Negligence;
)    14.  Breach of Implied Covenant of Good Faith
)         and Fair Dealing;
)    15.  Intentional Infliction of Emotional Distress.
)
)
)    **JURY TRIAL DEMANDED**
)

Come now Plaintiff, and demanding trial by jury, complain and allege upon information and belief as follows:

## I.

## INTRODUCTION

1.      This case is illustrative of considerable mortgage broker misconduct, as well as complicity of the residential real estate industry.  In April of 2004, Plaintiff MICHAEL BURROWS ("Plaintiff") purchased a home[1] in San Diego by depositing a down-payment of $35,000.00 of his own savings, and financed the $295,000.00 balance with first and second mortgages at 4.757% and 4% respectively.   In December 2006, Mr. Burrows' combined monthly mortgage payments totaled $1,278.00, and after almost three years of making timely payments Mr. Burrows' mortgage payoff amount was $280,828.00.  **[Attachment N]**  That same month, Defendants, in this here Complaint, targeted Mr. Burrows with advertisement flyers and promises of refinancing Mr. Burrows' mortgage and matching Mr. Burrows with the best possible interest rate.  Mr. Burrows telephoned Defendants and unequivocally indicated he was only interested in finding a loan product to refinance his home if the loan would; (1) save him money, and (2) fix the interest rate to his mortgage for thirty (30) years (hereinafter **"30-YEAR FIXED"**).

2.      This Complaint for damages, restitution, injunctive and declaratory relief illustrates how Defendants exploited Mr. Burrows' trust and confidence as an opportunity to convert Mr. Burrows' home into a cash cow, and milk the equity out of his home and hard-earned income for a generation of

---

[1] The property subject to the loans and loan transaction referenced herein is located at 4255 33rd Street, #6, San Diego, California 92104.

years to come.  As will be further discussed, by employing slight of hand tricks, bait and switch tactics, inflated claims, and loan falsifications, Defendants churned Mr. Burrows through a financial "spin" cycle.  Specifically, even with Mr. Burrows' having a near "800" credit score [**Attachment M**], Defendants placed Mr. Burrows into a 5-Year negative amortization, adjustable rate mortgages at 7.94% and 10.36%, respectively, with prepayment penalties (hereinafter "**OPTEUM/OIT loans**").  Moreover, after Defendants' charging of excessive, duplicative, unearned fees, and illegal kickbacks, Mr. Burrows now finds himself with finance charges totaling more than $570,000.00 throughout the course of the life of the mortgages.

3.    A simple side-by-side comparison of Mr. Burrows' prior mortgages, and Defendants' loan products illustrates how each and every party to this faulty loan transaction directly benefited from the loan transaction, *except* for Mr. Burrows.

4.    Defendants' motivation, and each of them, was to collect approximately **$17,000.00** from Plaintiff's equity in his home based on points, yield spread premiums ("YSP"), commissions, fees, premiums, junk fees.  On an approximately $282,000.00 loan, which is what Plaintiff received from Defendants, the U.S. National average percentage of total fees to loan value would be approximately $5,190.00—or 1.84% of fees to loan value.  [Source, Bankrate.com, July 2007.]

5.    Defendants, and each of them, employed predatory lending practices with regard to Plaintiff in the advertisement, solicitation of bad loan products, misrepresentation, and unlawful facilitation of the loan transaction.

6.    Predatory and abusive lending practices inflict a wide-ranging damage on society: borrowers and their families can be devastated by these practices, which often result in non-judicial foreclosure of the borrowers' homes.  Defendants in this action preyed upon Plaintiff, who believed Defendants to have acted in Plaintiff's best interest.  Plaintiff seeks rescission of the predatory loans in which he is trapped, equitable relief on behalf of the general public, and monetary damages.  This is an action for declaratory judgment, permanent injunctive relief, and damages for predatory mortgage lending.  Punitive damages and treble damages are also sought as applicable to make an example out of these predatory Defendants.

//

---

**COMPLAINT ON PREDATORY LENDING AND ILLEGAL KICKBACKS**

## II.

## JURSIDICTION AND VENUE

7.　　Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal claims and arise out of a common nucleus of related facts and form part of the same case or controversy under Article III of the United States Constitution.

8.　　The Court has jurisdiction over Plaintiff's action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  Injunctive relief is authorized by 28 U.S.C. § 2203 and Rule 65 of the Federal Rule of Civil Procedure.

9.　　Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gave rise to these claims occurred within the Southern District of California.

## III.

## DEFENDANTS ARE PREDATORY LENDERS AND BROKERS

10.　　There is no uniformly accepted definition of "predatory lending."  However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower's lack of understanding about loan terms."  *Curbing Predatory Home Mortgage Lending* (June 2000), a joint report of the Department of Housing and Urban Development and the Treasury Task force on Predatory Lending ("HUD report") at 1.  According to HUD, "[t]hese practices are often combined with loan terms that, alone or in combination, are abusive or make the borrower more vulnerable to abusive practices." *Id.*

11.　　HUD and the United States General Accounting Office ("GAO") have identified various lending practices as predatory.  Since predatory lenders are constantly developing new techniques to take advantage of borrowers, any enumeration of predatory practices necessarily will be incomplete.  Nevertheless, it is generally accepted by the lending industry and government agencies that monitor that industry that predatory lending practices include:  (a) engaging in aggressive, high-

pressure and/or misleading sales tactics; (b) lending without regard to the borrower's ability to repay; (c) imposing excessive prepayment penalties that trap borrowers into predatory loans; (d) making representations or to otherwise misleading borrowers about loan terms; (e) falsifying loan documents; (f) targeting low-income, elderly and minority borrowers for predatory lending campaigns; (g) charging excessive fees, points and interest rates unrelated to the borrowers for predatory lending campaigns; (g) charging excessive fees, points and interest rates unrelated to the borrower's credit/risk profile; (h) misleading borrowers about the borrower's credit/risk profile to steer borrowers to a higher-cost loan that is not justified by the borrower's true profile; and (i) causing borrowers to refinance loans multiple times over a short period of time without any economic gain to the borrowers. HUD Report at 2; *Federal and State Agencies Face Challenges in Combating Predatory Lending* (January 2004), a report by the United States General Accounting Office ("GAO") Report at 3-4, 18-19. These and similar practices, individually and collectively, are referred to herein as "predatory lending" practices. <u>Defendants engaged in many of the above practices toward Mr. Burrows.</u>

12.     Predatory lenders frequently deceive borrowers and engage in outright fraud through practices such as falsifying loan applications. GAO Report at 19. The elderly are primary targets and victims of predatory lending practices. Predatory lenders prey on the elderly who are financially unsophisticated and/or lack access to mainstream financial outlets. HUD Report at 22; GAO Report at 25. <u>Defendants engaged in this practice toward Mr. Burrows.</u>

13.     Predatory lending practices often lead homeowners into a cycle of refinancing, foreclosure, economic ruination and segregation from conventional credit sources. HUD Report at 87. On a larger scale, when predatory lending practices are concentrated in specific areas—as they frequently are—communities suffer from destabilization through the loss of equity, distressed and vacant properties, and stifled economic development. GAO Report at 20. This causes a depression in property values and requires entire neighborhoods to pay the price for the wrongful practices of unscrupulous lenders.

14.     Subprime lending, which may be a form of predatory lending, is a rapidly growing segment of the mortgage market which generally consists of borrowers who, for a variety of reason, might be denied access to market-fair credit due to their perceived "credit risk." A typical borrower in

---

the subprime mortgage market is a "house-rich" but "cash-poor," having built up equity in his home but in little else, and has a lower net income than the average borrower.  Subprime lenders generally charge **somewhat** higher interest rates to account for the increased "**credit risk**" associated with these loans. *There is no great capital risk to subprime lending because lenders have their money secured by the real estate, and in general do not lend above 70% of the appraised value to ensure repayment of the principal of the loan as well as coverage for any foreclosure cost.*  If Lenders do lend at a higher loan to value figure, the lenders can always demand mortgage insurance from the borrower.  Mr. Burrow's credit scores have a range of 767-795 on an 850 scale.  **[Attachment M]**

15.     However, unscrupulous lenders/brokers have up-played the "credit risk" argument in the subprime market to justify engaging in predatory lending which is nothing less than an attempt to steal as much money as possible from the equity in a borrower's home, and this includes designing a transaction which will intentionally lead to a refinancing and/or foreclosure on the borrower's home.  These lenders/brokers are called predatory because they prey on financial naïve borrowers who are cash poor but equity rich.  The Defendants in this Complaint are predatory lenders and brokers.

16.     A predatory mortgage broker acts as the agent of the lender and abandons his fiduciary duty to the buyer.  The predatory mortgage broker "preys" on the borrower to take as much money in fees, costs, commissions as possible from the equity in the borrower's home.  Predatory lenders engage in the same conduct and/or adopt a closed eye posture to the predatory mortgage broker's forged applicants' data on loan applications.

17.     Plaintiff alleges that Defendants, and each of them, train their employees/agents to lure borrowers with promises that their loans will have certain terms and conditions, knowing Defendants have no intent of providing such loans, and then use slight of hand shuffling tactics, high-pressure sales tactics, or outright fraud to induce borrowers to sign loan contracts with significantly less favorable terms and conditions.  Plaintiff alleges Defendants failed to provide required disclosures, failed to leave a true copy of loan documents in borrowers' possession, unlawfully induced borrowers to enter into mortgages knowing that borrowers will not be able to meet the monthly mortgage payments based on their monthly income or where excessive or unfair fees are levied, that mortgage salespeople and brokers forged applicants' data on loan applications.

## IV.

## **PARTIES**

18.    Plaintiff, MICHAEL BURROWS (hereinafter **"Plaintiff"**) was at all relevant times mentioned herein a resident of San Diego, California.

19.    Plaintiff is informed and believes and thereon alleges that Defendant OPTEUM FINANCIAL SERVICES, LLC (hereinafter **"OPTEUM"**) is a Delaware limited liability company doing business in the State of California with a local address at 2020 Camino Del Rio N, Suite 300, San Diego, CA 92108.  Plaintiff is further informed and believes OPTEUM is not duly registered as a limited liability company in the State of California.

20.    Plaintiff is informed and believes and thereon alleges that Defendant ORCHID ISLAND TRS, LLC (hereinafter **"OIT"**) is a Delaware limited liability company doing business in the State of California.   Plaintiff is further informed and believes that on July 3, 2007, Defendant OPTEUM changed its name to ORCHID ISLAND TRS, LLC.

21.    Plaintiff is informed and believes and thereon alleges that Defendant GOLDEN VALLEY LENDING GROUP, INC. (hereinafter **"GOLDEN VALLEY"**) is a corporation doing business in the State of California with a local address of 830 East Vista Way, # 119, Vista, CA 92084.

22.    Plaintiff is informed and believes and thereon alleges that Defendant FIRST NLC FINANCIAL SERVICES, LLC.   Plaintiff is informed and believes that Defendant FIRST NLC FINANCIAL SERVICES, LLC also does business under the name THE LENDING CENTER (hereinafter **"LENDING CENTER"**) and that LENDING CENTER is a retail division of First NLC Financial Services, LLC with a local office address of 5963 La Place Court, #110, Carlsbad, CA.

23.    Plaintiff is informed and believes and thereon alleges that Defendant Christine R. Smith (hereinafter **"SMITH"**) is a San Diego resident, and was at all relevant times herein mentioned an owner, agent and/or employee of the corporate Defendants.  Plaintiff is further informed and believes, and thereon alleges, that at all relevant times herein Defendant SMITH engaged in the deceptive acts and practices which will be alleged below while acting within the scope of this employment with the corporate Defendants.   Defendant SMITH's last known address is 1510 South Coast Highway,

Oceanside, CA 92054.  Based on information and belief, Defendant GOLDEN VALLEY has fired Defendant SMITH.

24.    At all times mentioned in the causes of action alleged herein, **each and every Defendant was an agent and/or employee of each and every other Defendant**.  In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission and authorization of each of the remaining Defendants, or otherwise acting with apparent authority.  All actions of each Defendant as alleged in the causes of action stated herein were ratified and approved by every other Defendant or his officers or managing agents.  Defendant knowingly and substantially participated in the conduct as alleged herein.

25.    **Defendants, LENDING CENTER/GOLDEN VALLEY/SMITH, and each of them, functioned as agents of OPTEUM/OIT who was the lender and LENDING CENTER/GOLDEN VALLEY/SMITH abandoned their fiduciary duties to Plaintiff.**    Defendants, LENDING CENTER/GOLDEN VALLEY/SMITH, and each of them, committed fraud regarding Plaintiff in terms of procuring his loan.

26.    At all times herein in relevant, there existed a civil conspiracy between Defendants, and each of them, the object of which was to reap substantial profits by targeting Plaintiff, and those similarly situated, to engage in transactions which were not for Plaintiff's benefit so as to increase fees and commissions, for the sale of unsuitable mortgages and thereafter seek to profit by foreclosure or refinancing on Plaintiff's equity in his home.  Said conspiracy also included a common plan or design to falsify the loan applications, to obscure the terms of the loan applications and to mislead and deflect any questions or complaints raised by Plaintiff regarding his loan applications.

27.    When this Complaint references any act of any Defendant or Defendants, such allegation shall be deemed to mean the act of those Defendants named in the particular cause of action and each of them acting, individually, jointly and severally.

//

//

//

---

**COMPLAINT ON PREDATORY LENDING AND ILLEGAL KICKBACKS**

## V.

### "DEFENDANTS' 2-PART

### DECEPTIVE ACTS AND PRACTICES PREDATORY LENDING SCHEME"

28.     Mr. Burrows hereby repeats and incorporates by this reference the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

29.     Plaintiff purchased his home, as alleged above, in April 2004 with a $35,000.00 down-payment of his own savings, and a 1st and 2nd mortgage which totaled approximately $295,000.00.

30.     In December 2006, Defendants engaged in their conduct as alleged herein without even being present at the closing of Defendants' LOANS.  Defendants never sat down with Mr. Burrows and explained what they were doing, what the risks were, and what the document terms meant. Defendants abandoned their fiduciary duties to Mr. Burrows.

**Part 1:With knowledge that Plaintiff only wanted to refinance his home with a 30-YEAR FIXED mortgage, Defendants promised to provide exactly that, and presented Plaintiff with a 30-YEAR FIXED mortgage at 6.30% as a decoy, but Defendants had no intention of selling that loan to Plaintiff.**

31.     In or about December 2006, Defendants targeted Plaintiff's home with advertisement flyers soliciting opportunities to refinance home loans and lower monthly mortgage payments. Plaintiff, thereafter responded to Defendants' advertising campaign, and spoke directly with Defendant CHRISTINE SMITH (hereinafter "**SMITH**") who works for Defendants as a salesperson.

32.     During Plaintiff's initial conversation with Defendant SMITH, Plaintiff made clear that he only wanted a 30-YEAR FIXED".  Defendant SMITH affirmed Plaintiff's desires and proceeded to take Plaintiff's personal financial information over the phone.

33.     A few days after this conversation, Plaintiff received a call from an individual named Damien Mikkelsen, who stated that he worked for (Defendant) LENDING CENTER, and with SMITH.  Mr. Mikkelsen requested further information from Plaintiff for the purposes of completing a loan application for a 30-YEAR FIXED loan.  Based upon information and belief, Plaintiff alleges that the personal information provided to SMITH and Mr. Mikkelsen was used in completing a loan application for a 30-YEAR FIXED loan [**Attachment A**].

34.     On or about December 19, 2006, Mr. Mikkelsen, with SMITH'S assistance, prepared a "1003" or a Uniform Residential Loan Application (hereinafter "APPLICATION") on behalf of Plaintiff to obtain financing for a 30-YEAR FIXED loan. **[Attachment A]**  The 30-YEAR FIXED loan APPLICATION identifies Plaintiff's income as "$3,200" per month. **[Attachment A at 2]**  Soon thereafter, Plaintiff received, as required by law, a Good Faith Estimate ("GFE") and Truth in Lending Act ("TILA") disclosure in regards to the 30-YEAR FIXED loan **[Attachment B]**.   The TILA disclosure identifies the annual interest rate associated with the 30-YEAR FIXED loan was 6.30%, and that payments would be fixed at $1,798.65 per month **[Attachment B at 2]**.   The GFE and TILA disclosures were both dated December 20, 2006.

35.     After receiving the 30-YEAR FIXED loan GFE and TILA disclosures, Defendant SMITH telephoned Plaintiff to tell him that based upon his income, he would not be able to qualify for a 30-YEAR FIXED loan.   Plaintiff was confused because each of Defendant SMITH's prior communication expressed intent to find Plaintiff a 30-YEAR FIXED loan.

36.     It was not until January 24, 2005, that Defendant SMITH telephoned Plaintiff stating that she discovered the "perfect" loan for him, that Plaintiff would receive $5,000.00 in cash as a rebate from the loan, and that a notary would be visiting Plaintiff's home the next day, which was Thursday, January 25, 2007.   Plaintiff was further confused in that he recalled that one month earlier he assisted SMITH and Mr. Mikkelsen in providing personal information needed to apply for the 30-YEAR FIXED loan and that he also received the GFE and TILA disclosures.   Plaintiff still believed Defendant SMITH would find Plaintiff a fixed-interest rate loan.   At the time Defendant SMITH called Plaintiff, SMITH was brief and provided **absolutely no details of, either, the loans offered to Plaintiff; the closing fees or costs associated with the loans; or any of the documents which Plaintiff was to sign when the notary arrived at his home**.

Part 2:  **Defendants solicitation and promise to obtain a 30-YEAR FIXED loan for Plaintiff was a fraud, and Defendants further falsified Plaintiff's loan APPLICATION to obtain for Plaintiff an unbelievably more expensive and unaffordable loan.**

37.     At approximately 8:00 p.m. on January 25, 2007, Jessica Graf, a notary public, arrived at Plaintiff's home. <u>Defendant SMITH did not come to Plaintiff's home and was not present at the</u>

1   time Plaintiff signed the loan closing documents.  Ms. Graf[2] brought with her, a stack of documents.

2   Neither Ms. Graf, nor Defendant SMITH, informed or explained the specific content or details of these

3   documents.  Ms. Graf instructed Plaintiff to sign all the documents according to SMITH's instructions.

4   Defendant SMITH affixed instructions to the first page of a set of documents which instructed Plaintiff

5   to "Date these 12/13/06."  [**Attachment C**]

6       38.    Plaintiff immediately telephoned SMITH to question her concerning the contents of the

7   documents and also the details of the loan terms offered to Plaintiff.  Defendant SMITH insisted and

8   counseled Plaintiff that these loans were "perfect" for Plaintiff's situation, and that Plaintiff should

9   remember to back-date those documents she identified.   Plaintiff trusted SMITH and believed

10  Defendant SMITH represented Plaintiff's best interests, and so he did as SMITH instructed.

11      39.    During Plaintiff's signing of loan closing documents, Plaintiff telephoned SMITH again

12  with additional questions.  Defendant SMITH was completely unreachable during the signing of the

13  loan closing documents.  Plaintiff then directed his questions to Ms. Graf, but Ms. Graf refused to

14  answer his questions, and further stated that she was not aware of its contents.  Ms. Graf insisted that

15  Plaintiff should just sign the documents.

16      40.    Defendants *failed to inform Plaintiff that he did not have to enter into these loans.*

17      41.    After signing the loan closing documents, and the set of documents which SMITH

18  instructed Plaintiff to back-date, Ms. Graf prepared to leave Plaintiff's home with **all** of the documents.

19  Plaintiff inquired whether he was supposed to keep a copy of the documents he signed.  Ms. Graf,

20  apparently surprised, stated that it was strange, but that there were no copies for Plaintiff.

21  Consequently, Ms. Graf, left Plaintiff's home **taking with her each and every document**.

22      42.    During the course of more than two weeks after Plaintiff signed the loan closing

23  documents, Plaintiff repeatedly attempted to contact Defendant SMITH regarding loan terms and the

24  promised cash rebate, but SMITH was completely unreachable.  Finally, on February 15, 2007,

25  SMITH emailed Plaintiff that she was having trouble with her phone.  [**Attachment G**]

26

27

---

28  [2] Plaintiff is informed and believes that Jessica Graf is a notary public who works for Defendant GOLDEN VALLEY.

**COMPLAINT ON PREDATORY LENDING AND ILLEGAL KICKBACKS**
- 11 -

43.    **Plaintiff's Right to Cancel**.  Defendants failed to provide Plaintiff with copies of any closing documents on January 25, 2007—the date Plaintiff signed loan closing documents.  Plaintiff was entitled to receive copies of at least, the Notice of Right to Cancel, the TILA disclosure statement, and HUD Settlement Statement.  Instead of leaving a copy with Plaintiff, on or about January 26, 2007, Defendants mailed a copy of Plaintiff's loan closing documents to Plaintiff's **parent's address**.  **[Attachment D]**  Because Defendants mailed a copy of loan closing documents to Plaintiff's parent's address, Plaintiff did not receive a copy of the loan documents until several days after the loan's closing date.  It was not until several weeks after the closing of the loan documents did Plaintiff discover the Notices of Right to Cancel buried among the copy of loan documents mailed by Defendants.  Plaintiff did not know he had a right to cancel his loans.  Even on Plaintiff's copy of Notice of Right to Cancel, Defendants hand-wrote an unreadable deadline date by which Plaintiff must exercise his right to cancel the loan transaction.  **[Attachment E]**  Defendants left Plaintiff no reasonable means to exercise his right to cancel the OPTEUM/OIT loans.

44.    When Plaintiff finally received a copy of his loan closing documents, he was utterly shocked that the loan Defendants counseled Plaintiff to enter into was a 5-year negative amortization adjustable rate mortgage ("5-YEAR ARM") at 7.94% with prepayment penalties and closing fees amounting to more than **$17,000.00**, more than 5% of the value of the loan.  **[Attachment F]**

45.    Plaintiff was also shocked that the documents which Defendant SMITH counseled and instructed Plaintiff to back-date, included a loan APPLICATION to obtain a 5-YEAR ARM, a Good Faith Estimate ("GFE") for a 5-YEAR ARM, and a Truth in Lending Act disclosure ("**TILA**") for a 5-YEAR ARM.  **[Attachment C]**  In fact, the fact that Plaintiff dated the APPLICATION, GFE, and TILA disclosures with the date "December 13, *2007*" instead of "December 13, *2006*" demonstrates the rushed environment Defendants created at Plaintiff's home on the loan closing date.  It further demonstrates Plaintiff's utter confusion as to Defendant SMITH's back-dating instructions.  There is no denying that Defendants prepared, and/or processed Plaintiff's loan APPLICATION on the same day as the loan closing date.  Attached hereto as "**Attachment L**" is a copy of an identical loan APPLICATION for a 5-YEAR ARM which Defendant SMITH inadvertently or mistakenly dated "1/25/2007" and included in Defendants' mailed-loan closing documents.

46.    Moreover, Plaintiff could not believe to see Defendant SMITH falsely listed on the loan APPLICATION that Plaintiff's monthly income was "$6,470.50" [**Attachment C** at 2] likely because SMITH wanted Plaintiff to qualify for such an expensive loan.    In fact, Defendants knew that Plaintiff's income was really $3,200 because Defendants completed Plaintiff's original loan application for a 30-YEAR FIXED loan just one month earlier. [**Attachment A** at 2]

47.    It was also at this point that Plaintiff realized that Defendant SMITH actually worked for Defendant GOLDEN VALLEY LENDING GROUP, INC. (hereinafter "**GOLDEN VALLEY**"), which was the mortgage broker identified on all of Plaintiff's loan closing documents.

48.    Independently from Plaintiff's review of the loan closing documents, from January 27 to February Plaintiff made repeated efforts to contact Defendant SMITH in regards to the loan's rebate check and the loan terms in general.  Defendant SMITH was utterly unreachable during this time.

49.    After discovering the terms of his loans, Plaintiff hired a real estate transactional attorney ("**RE Attorney**") for assistance related to Plaintiff's desire to reverse the loan transaction.

50.    Plaintiff's RE Attorney began his assistance to Plaintiff by first trying to contact SMITH or Mr. Mikkelsen at LENDING CENTER.  Defendant LENDING CENTER informed Plaintiff's RE Attorney that Mr. Mikkelsen **and** Defendant SMITH were "fired" or "let go."

51.    After discovering Notices of Right to Cancel shuffled amongst other loan closing documents, Plaintiff sent Defendants notices of his desire to exercise that right on February 27, 2007. On March 13, 2007, Defendant OPTEUM/OIT's Associate General Counsel, Henry Cronk, denied Plaintiff's demand to cancel his loans, and explained that there existed no basis for suggesting Plaintiff did not receive due Notice of Right to Cancel, and that Plaintiff's demand was untimely beyond the three (3) days allowed to cancel by statute. [**Attachment H**]

52.    On March 30, 2007, Plaintiff's RE Attorney sent Mr. Cronk a detailed letter recounting the unscrupulous events surrounding Plaintiff's loans.  [**Attachment I**]  Defendants subsequently offered to compromise with Plaintiff regarding this matter, but ultimately, and to date, Defendants have done nothing to compensate, rectify, correct, or address Plaintiff's injuries.

53.    In or about May or June 2007, Defendant OPTEUM/OIT sold both of Plaintiff's loans to EMC Mortgage Corporation ("**EMC**") and Specialized Loan Servicing, LLC. ("**SLS**").

54.    Upon information and belief, none of the above entities, Defendant OPTEUM/OIT, EMC Mortgage Corporation nor Specialized Loan Servicing, LLC, sent to Plaintiff written notices regarding the transferring of the servicing of Plaintiff's loans.  Plaintiff only discovered that the OPTEUM/OIT loans were sold to EMC and SLS when he began receiving payment vouchers from EMC and SLS.

**COMPARISON BETWEEN PLAINTIFF'S PRIOR MORTAGES**

**AND DEFENDANTS' OPTEUM/OIT LOANS**

55.    Plaintiff's belief all along was that he would receive a 30-YEAR FIXED mortgage.  A comparison between Plaintiff's original mortgages and Defendants' OPTEUM/OIT loans clearly shows that Plaintiff would have been better off if he had never met or engaged with Defendants.

56.    A comparison between Plaintiff's past and present loans shows that Defendants were undoubtedly motivated by earning fees, points, commissions, Yield Spread Premiums, unearned charges and putting Plaintiff into an unbelievably more expensive loan.  Defendants, by placing him in loans which double his finance charges, essentially set Plaintiff's home up as their own personal "ATM" for a generation of years to come.

57.    On April 21, 2004, Plaintiff purchased his home by paying a down-payment of $35,000 of his own hard-earned savings, and obtaining approximately a $244,000 1st mortgage from Downey Savings and Loan Association, and a $30,500 2nd mortgage from Washington Mutual Bank, FA.

58.    Plaintiff's 1st and 2nd mortgages had:

    a.  an approximately 4.757% interest rate and 4% interest rate, respectively;

    b.  immediately before dealing with Defendants, a final payoff of $250,929.00 and $29,899.00, respectively [**Attachment N**];

    c.  immediately before dealing with Defendants, no prepayment penalties to refinance;

    d.  a combined monthly payment obligation of **$1,278.00 [Attachment N]**;  and

    e.  finance charges of not more than **$250,000.00** on the 1st mortgage and 2nd mortgages combined.

59.    Plaintiff was able to afford his $1,278.00 total monthly mortgage payments with his $3,200 per month salary.

60.   Instead of receiving a 30-YEAR FIXED loan as Defendants promised, Plaintiff received two (2) mortgages from Defendants, including Defendant OPTEUM/OIT's 5-YEAR ARM at 7.94% with negative amortization and a prepayment penalty. **[Attachment F]**

61.   Defendants' OPTEUM/OIT 1st and 2nd mortgages had:

    a.  a $256,000.00 and a $47,000.00 principal balance, respectively **[Attachment F** at 3**]**;

    b.  a 7.941% and 10.36% interest rate, respectively **[Attachments J]**;

    c.  negative amortization payments [Attachment "py schedule"] and prepayment penalty;

    d.  combined monthly, fully amortized, mortgage payments of **$2,481.81**; and

    e.  total finance charges of $506,443.88 and $69,764.09 **[Attachments J]**.

62.   Defendants' OPTEUM/OIT loans were substantially more expensive than Plaintiff's prior loans, and Plaintiff's near "800" score entitled him to a better loan. **[Attachment M]**

63.   Upon information and belief, Defendants GOLDEN VALLEY/SMITH would not have received from OPTEUM/OIT any Yield Spread Premium in the amount of $2,880.00 if Defendants had sold Plaintiff a 30-YEAR FIXED instead of a 5-YEAR ARM, and an overall more expensive loan.

64.   It is clear from the loan comparison, that neither Plaintiff, nor any reasonable person would have chosen to enter into Defendants' OPTEUM/OIT loans if he had fully been aware, much less understood, the terms of the OPTEUM/OIT loans.

65.   Additional to putting Plaintiff into unreasonably more expensive loans, Defendants charged Plaintiff unreasonable, duplicative and unearned fees, totaling more than **$17,000**. **[Attachment F** at 4**]** On an approximately $282,000.00 loan, which is what Plaintiff received from Defendants, the U.S. National average percentage of total fees to loan value would be approximately $5,190.00—or 1.84% of fees to loan value. [Source, Bankrate.com, July 2007.]   Defendants' fees included the following [Attachment " "]:

    a.  an outrageous $5,120 origination fee to Defendant GOLDEN VALLEY [On a $282,000 loan the U.S. average broker origination fee is $1,571.88. Source, Bankrate.com, July of 2007].

    b.  a $950 administrative fee to OPTEUM/OIT, which should be encompassed within the outrageous origination fee that was charged,

c.  a $950 *duplicative* administrative fee to GOLDEN VALLEY, which should be encompassed within the outrageous origination fee that was charged,

d.  a *second* administrative fee of $150 to OPTEUM/OIT, which should not have been charged, or at least within the outrageous origination fee that was charged,

e.  a $5,881.22 "unidentified" fee to OPTEUM/OI, which should not have been charged,

f.  a $2,880 additional Yield Spread Premium to GOLDEN VALLEY, which should be encompassed within the outrageous origination fee that was charged.

66.   Based upon their 2-part Deceptive Scheme as alleged above, the value of the services the Defendants, and each of them, provided to Plaintiff in terms of the loan(s), the loan process, and in falsifying his income on the loan applications, is ZERO.

## VI.

## INJURIES

67.   In January 2007, when Plaintiff refinanced through Defendants, Plaintiff did not have a sufficient combined income that would allow him to meet his monthly mortgagee payments and would satisfy all of his financial obligations.  Plaintiff identified to Defendants that his monthly income was approximately $3,200.

68.   Plaintiff went into a state of shock when he received a copy of his loan documents several days after the closing date.  Specifically, he was shocked to realize that the combined "*less than interest*" monthly fully amortized mortgage payments to Defendants would be **$2,481.81**.

69.   Plaintiff also has experienced and continues to experience emotional distress and shock and humiliation as a result of Defendants' actions.

70.   There now exists an actual controversy between the parties regarding Defendants' duties under applicable law.  Therefore, Plaintiff is entitled to declaratory relief.

71.   Defendants have illegally gained fees, commissions and profits from Plaintiff as described herein.  Therefore, Plaintiff is entitled to restitution.

72.   Unless enjoined, Defendants will continue to engage in the unlawful acts described above.  Plaintiff continues to suffer irreparable harm from Defendants unlawful acts unless relief is provided by this Court.  Accordingly, Plaintiff is entitled to injunctive relief.

73.    Defendants acted intentionally, maliciously, wantonly, recklessly and in bad faith as described herein.  Accordingly, where appropriate, Plaintiff is entitled to punitive damages, and treble damages under Cal. Civ. Code § 3345, as Defendants knew or should have known that their conduct was directed to Plaintiff, and that Defendants' conduct would most likely cause Plaintiff to suffer loss or encumbrance of his primary residence.

**FIRST CAUSE OF ACTION**

**Violation of the Truth and Lending Act,**

**15 U.S.C. § 1601 *et seq.*, and**

**Federal Reserve Regulation Z, 12 C.F.R. § 226 *et seq.*;**

**(Against all Defendants)**

74.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

75.    Plaintiff has served Defendants OPTEUM/OIT, with a written Notice of Cancellation as authorized under the TILA.  Defendant OPTEUM/OIT denied Plaintiff's demand.  [Attachment " "]

76.    Defendant OPTEUM/OIT is a creditor within the meaning of the Truth In Lending Act ("TILA") as implemented by Regulation Z.

77.    Defendants violated TILA and Regulation Z by failing to provide Plaintiff with appropriate material disclosures under TILA, including but not limited to the following:

   a.    Defendants, and each of them, falsified Plaintiff's loan information, and/or closed their eyes to the ability to Plaintiff herein to repay loan;

   b.    Plaintiff was overcharged for closing costs, commissions and related fees, which Defendants failed to disclose to Plaintiff which were not bona fide and reasonable and thus were "finance charges" under TILA that required proper disclosure which Defendants did not make in their TILA(s) and which altered the entire accuracy of Defendants' TILA(s).  Defendants GOLDEN VALLEY/ LENDING CENTER/SMITH functioned as the agents of Defendant OPTEUM/OIT and abandoned their fiduciary duties to Plaintiff.  Defendant OPTEUM/OIT paid the other Defendants under the guise of paying their fees, costs and commissions, but these payments were "**finance**

charges" because the value of these services these Defendants actually performed for Plaintiff by implementing their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above, is ZERO.  Defendants targeted Plaintiff with advertisement flyers; made promises of being able to re-finance Plaintiff's existing loans into a 30-YEAR FIXED loan; Defendants then did a bait and switch and put Plaintiff into a negative amortization loan where Plaintiff would be paying **less** than interest on the loan for the initial fifty (50) month period and the monthly payments were at a minimum approximately $1,274.05 and maximum of approximately $2,080.35, and which had him borrowing money from his equity at 7.94%; falsified Plaintiff's loan application; failed to disclose material terms of the transaction to Plaintiff so that Defendants could receive fees, points, yield spread premiums ("YSP") and commissions.  Thus, Defendants' fees, points, YSP and commissions were not bona fide and reasonable and were "**finance charges**" under TILA that required proper disclosure in the TILA and which altered the accuracy of the entire TILA.

c.  Plaintiff applied for and was told that Defendants would refinance his mortgages into a 30-YEAR FIXED loan.  Defendants did not refinance Plaintiff's mortgages into such a loan.  Defendants did not issue Plaintiff a TILA based on such a loan.  Defendants did not notify Plaintiff that they were not underwriting the 30-YEAR FIXED loan that he was solicited, offered, and promised and did not notify Plaintiff that the TILA presented at closing was not for the 30-YEAR FIXED loan that Plaintiff was solicited with by Defendants GOLDEN VALLEY/ LENDING CENTER/SMITH.

78.  Any and all statute(s) of limitations relating to disclosure and notices required under 15 U.S.C. § 1601 *et seq.* were tolled due to the Defendants' failure to effectively provide the required disclosures and notices.

79.  An actual controversy now exists between Plaintiff, who contends he has the right to rescind the OPTEUM/OIT loans alleged in this Complaint, and, based on information and belief, Defendant OPTEUM/OIT who denies that right.

80.     As a direct and proximate result of these violations, Plaintiff was and continues to be damaged in an amount according to proof but not yet ascertained including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

81.     Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

82.     Plaintiff believes the acts of Defendants as described herein were willful, wanton and in conscious disregard of the rights of Plaintiff and on that basis allege that Plaintiff is entitled to recover punitive damages in an amount to be established at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### Violation of the Real Estate and Settlement Procedures Act,

### 12 U.S.C. § 2601 *et seq.*, and

### Federal Reserve Regulation X, 24 C.F.R. § 3500 *et seq.*;

### (Against all Defendants)

83.     Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

84.     The loans to Plaintiff by Defendant OPTEUM/OIT are federally related mortgage loans defined in the Real Estate Settlement Procedures Act ("**RESPA**") and implemented by Regulation X which are broad in terms of their requirements.

85.     Defendants violated <u>Section 8(a) of RESPA</u>, <u>12 U.S.C. § 2607(a)</u>, which provides that "no person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

86.     Defendants also violated <u>Section 8(a) of RESPA</u>, <u>12 U.S.C. § 2607(b)</u>, which provides that "no person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." <u>Section 8</u>

1  violations are further defined by 24 C.F.R. § 3500.14, "Prohibition against kickbacks and unearned

2  fees."

3      87.    Also, HUD addressed payments in the form of yield spread premiums ("**YSP**"), and

4  explained that "in some cases less scrupulous brokers and lenders take advantage of the complexity of

5  the settlement transaction and use yield spread premiums as a way to enhance the profitability of

6  mortgage transactions without offering the borrower lower up front fees." Id. at 53,054.

7      88.    Defendant OPTEUM/OIT paid to Defendants GOLDEN VALLEY/ LENDING

8  CENTER/SMITH, a YSP on Plaintiff's loans and no Defendant offered Plaintiff lower up front fees

9  for this YSP payment.  To the contrary, Defendants implemented their "**2-part Deceptive Acts and**

10  **Practices Predatory Lending Scheme**" against Plaintiff and placed him into a more expensive loan

11  than he was in prior to meeting Defendants.

12      89.    Moreover, HUD established a two-part test for determining the legality of lender

13  payments to mortgage brokers under RESPA: (1) Whether goods or facilities were actually furnished

14  or the services were actually performed for the compensation paid, and (2) whether the payments are

15  reasonably related to the value of the goods or facilities that were actually furnished or services that

16  were actually performed.  HUD, Statement of Policy 2001-1, 66 Fed. Reg. at 53,052.

17      90.    In this case, Defendants, and each of them, engaged in goods/services that were not

18  actually performed and where the payments were not reasonably related to the value of the

19  goods/services because Defendants' chose to implement their "**2-part Deceptive Acts and Practices**

20  **Predatory Lending Scheme**" as alleged above.

21      91.    The value of the services that Defendants actually performed for Plaintiff by

22  implementing their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged

23  above, is ZERO.  Defendants targeted Plaintiff with advertisement fliers; made promises of being able

24  to re-finance Plaintiff's existing loans into a 30-YEAR FIXED mortgage; Defendants then did a bait

25  and switch and put Plaintiff into a negative amortization loan where Plaintiff would be paying **less** than

26  interest on the loan for the initial fifty (50) month period and the monthly payments were at a

27  minimum approximately $1,274.05 and maximum of approximately $2,080.35, and which had him

28  borrowing money from his equity at 7.94%; falsified Plaintiff's loan application; failed to disclose

material terms of the transaction to Plaintiff so that Defendants could receive fees, points, yield spread premiums ("YSP") and commissions. Thus, Defendants' fees, points, YSP and commissions were not bona fide and reasonable and were "**finance charges**" under TILA that required proper disclosure in the TILA and which altered the accuracy of the entire TILA.

92. Defendants' acceptance of a YSP and/or other payments and Defendant OPTEUM/OIT's payment of that YSP or other payments, was an unlawful kickback, unlawful fee splitting and/or an unearned fee under RESPA because it was not reasonably related to the performance of lawful services by the accepting Defendants. Instead of performing lawful services, the accepting Defendants implemented their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above.

93. Defendant OPTEUM/OIT should have known that Defendant GOLDEN VALLEY/LENDING CENTER/SMITH did not earn the YSP or other payments because, *inter alia*, "....common industry practice is that lenders follow underwriting standard that demand a review of originations and therefore lenders typically know that brokers have performed the services required...." HUD's 2001-1 Policy Statement at 53055. If Defendant OPTEUM/OIT had reviewed Plaintiff's loan originations, including his loan applications, OPTEUM/OIT would have learned of the obvious red flags they contained.

94. RESPA also prohibits any person from accepting an excessive or unearned fees. All fees on Plaintiff's loan are excessive or unearned because the loan was not reasonably related to the performance of lawful services, in that it had been falsified through Defendants implementation of their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above.

**Defendants GOLDEN VALLEY/LENDING CENTER/SMITH**

a. an outrageous $5,120 origination fee to Defendant GOLDEN VALLEY [On a $282,000 loan the U.S. average broker origination fee is $1,571.88. Source, Bankrate.com, July of 2007].

b. a $950 administrative fee to OPTEUM/OIT, which should be encompassed within the outrageous origination fee that was charged,

c. a $950 *duplicative* administrative fee to GOLDEN VALLEY, which should be encompassed within the outrageous origination fee that was charged,

d. a *second* administrative fee of $150 to OPTEUM/OIT, which should not have been charged, or at least within the outrageous origination fee that was charged,

e. a $5,881.22 "unidentified" fee to OPTEUM/OI, which should not have been charged,

a. a $2,880 additional Yield Spread Premium to GOLDEN VALLEY, which should be encompassed within the outrageous origination fee that was charged;

95.     All of these fees paid to these Defendants, and each of them, were excessive and/or unearned fees, and were unlawful kickbacks under RESPA because they were not reasonably related to the performance of lawful services.

96.     Pursuant to 12 U.S.C. § 2607(d), Plaintiff is entitled to recover from Defendant, and each of them, an amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Plaintiff, as well as actual damages, court costs, attorneys' fees, and any other amounts or damages permissible under RESPA.

97.     By the actions described herein and as a proximate cause of Defendants' conduct, Plaintiff was damaged, in an amount to be proven at trial but not yet ascertained.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION

### Violation of California Civil Code Sections 1920 and 1921;

### (Against all Defendants)

98.     Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

99.     Based on information and belief, Plaintiff alleges that Defendants, and each of them, violated California Civil Code Section 1920 and 1921 in failing to meet the requirements of an adjustable rate mortgage instrument as set forth in California Civil Code Section 1920, and the requirements for disclosure of information in connection with an adjustable rate mortgage instrument as set forth in California Code Section 1921.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Violation of Unfair Competition Act,

### California Business and Professions Code § 17200 *et seq.*;

### (Against all Defendants)

100.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

101.    Defendants and each of them, have committed acts of unfair business practices, as defined by California Business and Professions Code § 17200, *et seq.*, by engaging in acts and practices which include, but are not limited to their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above, and including but not limited to making loans based on borrower information which Defendants, and each of them, falsified; using bait and switch tactics; making loans without confirming or verifying borrower information; making loans without providing the borrower with sufficient, accurate and understandable information regarding the terms and conditions of the loan; making loans without providing the borrower with sufficient, accurate and understandable information regarding the nature and extent of the financial risk being assumed by the borrower; and making loans without regard to the financial ability of the borrower to pay.

102.    These acts all as alleged above violate California Business and Professions Code § 17200, *et seq.* in the manner alleged above, and, based on information and belief, in the following further respects:  Defendants' conduct threatens an incipient violation of various consumer protection statutes, or which violate the policy or spirit of such laws, including, but not limited to, California Business and Professions Code § 17500; California Civil Code § 1921; California Civil Code § 1920; California Civil Code § 1770; California Civil Code Section1709, 1710, and 1711; Section 1639 of Title 15 of the United States Codes, together with 12 C.F.R. 226.1 (Regulation Z).

103.    All Defendants engaged in the following unfair business practices including, without limitation, the following:

a.   Implementing Defendants' "**2-part Deceptive Acts and Practices Predatory Lending Scheme**";

---

**COMPLAINT ON PREDATORY LENDING AND ILLEGAL KICKBACKS**

b. Engaging in predatory lending practices in dealings with Plaintiff including, but not limited to, the use of high pressure sales tactics and the falsification of Plaintiff's loan application information;

c. Self-dealing at the expense of Plaintiff;

d. Failing to provide notices and disclosures required by TILA and RESPA;

e. Violating TILA; Violating RESPA; Violating the False Advertising Act, California Business and Professions Code § 17500 *et seq.*, or any other applicable statute;

f. Charging and collecting fees in excess than those permitted under statute;

g. Charging, collecting and distributing illegal kickbacks and fee splitting under the guise of fees and commission for services that had no reasonable value due to the Defendants' **"2-part Deceptive Acts and Practices Predatory Lending Scheme"**;

h. Other acts that Plaintiff is presently unaware of;

104.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, obtained illegal kickbacks and/or illegal fee splitting from Plaintiff's equity in his home. Predictably, Plaintiff is now having to refinance his loans to get out of the Defendants' OPTEUM/OIT loans and will incur even more damages to his equity. Plaintiff has suffered injury as alleged herein.

105.    Plaintiff individually and on behalf of the public, seeks an order of this Court enjoining Defendants and prohibiting each of the said Defendants from predatory loan practices of the nature and kind herein alleged, as the public and Plaintiff will be irreparably harmed if such an order is not granted.

106.    Defendants have been unjustly enriched at the expense of Plaintiff, who therefore is entitled to equitable restitution and disgorgement of profits realized by Defendants as a result of the unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

107.    Moreover, because Plaintiff brings this action on behalf of himself and on behalf of the general public, he is entitled to reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5. Plaintiff has sustained damages, including attorney fees and legal costs, and will sustain additional damages in prosecuting this action.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION

**Violation of False Advertising Act,**

**California Business and Professions Code § 17500 *et seq.*;**

**(Against all GOLDEN EQUITY/SMITH)**

108.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

109.    Defendants implemented their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above.  The targeted advertisement flyer, promotional materials and other written or oral promotion efforts undertaken by Defendants to induce consumers to enter into loan transactions contained statements that were deceptive, untrue and/or misleading, or omitted material information, and which were known, or by the exercise of reasonable care should have been known by Defendants to be deceptive, untrue and/or misleading, in violation of California Business and Professions Code § 17500 *et seq.*

110.    Defendants' use of various forms of advertising call attention to or give publicity to the sale of their goods or services, and other practices, as set forth above, which were not as advertised or as otherwise represented, constituted unfair competition, deceptive untrue and/or misleading advertising and unlawful business practice within the meaning of California Business and Professions Code § 17200 *et seq.*, and 17500 *et seq.*

111.    These advertisements and practices have deceived and injured Plaintiff and are likely to deceive and injure the consuming public in violation of those sections.

112.    Pursuant to California Business and Professions Code §§ 17703 and 17535, Plaintiff individually and on behalf of the public, seeks an order of this Court enjoining Defendants from continuing to engage in their false advertising practices.  The public and Plaintiff will be irreparably harmed if such an order is not granted.

113.    Defendants have been unjustly enriched at the expense of Plaintiff, who wherefore is entitled to equitable restitution and disgorgement of profits realized by Defendants as a result of the unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

114.    Moreover, because Plaintiff brings this action on behalf of himself and on behalf of the general public, he is entitled to reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SIXTH CAUSE OF ACTION

**Constructive Fraud**

**California Civil Code § 1573;**

**(Against Defendants GOLDEN VALLEY/LENDING CENTER/SMITH)**

115.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

116.    Defendants GOLDEN VALLEY/LENDING CENTER/SMITH owed a fiduciary duty to Plaintiff because they were acting in their capacities as DRE licensees and/or mortgage brokers.

117.    Defendants breached that duty by, *inter alia*, implementing their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above, and misrepresenting or failing to disclose material facts about the transaction.

118.    Specifically, GOLDEN VALLEY/ LENDING CENTER allowed Defendant SMITH, as their agent, to falsely represent that Defendants would offer Plaintiff a more valuable loan, and particularly a 30-YEAR FIXED mortgage. Defendants then proceeded to use a bait and switch tactics, slight of hand paper shuffling techniques, and brazenly, secretly and intentionally implemented their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above in order to charge Plaintiff unreasonable, duplicative and unearned fees. Defendants were aware that Plaintiff's understanding was that he would receive a thirty (30) year fixed interest rate mortgage. Defendants were also aware that Plaintiff would not be able to afford the product they were selling him.

119.    Defendants also concealed, certain material facts from Plaintiff who was not aware of them including, but not limited to the following:

a.    The true terms of Plaintiff's loan;.

b.    That Plaintiff was getting two (2) adjustable rate mortgages on his home, including a 5-YEAR ARM at 7.94% with negative amortization and a prepayment penalty;

---

c. That Plaintiff was not going to receive $5,000 at closing as Defendant SMITH promised;

d. That Defendants would charge a total closing fees of over $17,000 which were excessive and duplicative;

e. That Defendants had falsified Plaintiff's income on his loan application for the 5-YEAR ARM;

f. That Defendants instructed him to sign "closing documents" which unbeknownst to Plaintiff included the Good Faith Estimate, TILA disclosures, the loan application for the 5-YEAR ARM with the other closing documents;

g. That Defendants unlawfully instructed Plaintiff to back-date Good Faith Estimate, TILA disclosures, the loan application for the 5-YEAR ARM;

h. That the loan(s) presented at closing were not the 30-YEAR FIXED loan which Defendants' solicited, offered and promised Plaintiff;

i. That, with Plaintiff's 767 to 795 FICO credit scores and history was entitled to a 30-YEAR FIXED mortgage, and an overall less expensive loan;

j. That Plaintiff was not obligated to proceed with the loan;

k. That Plaintiff would divest all of the equity in his home that he earned under his previous loan;

l. That Plaintiff had a right to cancel the loan within three days;

m. Other Acts of which Plaintiff is presently unaware;

120. Plaintiff reasonably relied on the misrepresentations or nondisclosures because he thought that Defendants were acting as his agents and in his best interests.

121. Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**". Plaintiff was utterly shocked when he realized that he had been tricked and deceived upon first notice that he was not receiving 30-YEAR FIXED mortgage.

122. As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiff

1  reasonably relied on Defendants' misrepresentations which were a substantial factor in causing
2  Plaintiff's damages.

3      123.   Defendants are guilty of malice, fraud or oppression, as defined in Civil Code § 3294,
4  and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of
5  and to punish Defendants.

6      WHEREFORE, Plaintiff prays for relief as set forth below.

7  **SEVENTH CAUSE OF ACTION**

8  **Intentional Misrepresentation**

9  **California Civil Code §§ 1709-1710;**

10  **(Against all Defendants)**

11      124.   Plaintiff realleges and incorporates by this reference all the allegations of the preceding
12  paragraphs of this Complaint as though fully set forth herein.

13      125.   Defendants knowingly and willfully induced Plaintiff to enter into the loan agreement
14  by making false oral statements and omitting material information regarding the terms of the loan and
15  Plaintiff's application.

16      126.   Specifically, GOLDEN VALLEY/SMITH, and others, falsely represented in **PART 1**
17  **of their "Deceptive Acts and Practices Predatory Lending Scheme"** as alleged above, including but
18  not limited to the following: that Plaintiff was to receive an overall "perfect" loan; that Defendants
19  were going to put Plaintiff into a 30-YEAR FIXED mortgage; that Defendants were acting in the best
20  interest of Plaintiff; and that Plaintiff would receive $5,000 at closing.

21      127.   Defendants knew that these representations were false at the time they were made or
22  made the false representations in reckless disregard of the truth.

23      128.   Defendants and each of them, then proceeded to implement **PART 2 of their**
24  **"Deceptive Acts and Practices Predatory Lending Scheme"** as alleged above.  Defendants
25  GOLDEN VALLEY/SMITH falsified Plaintiff's loan applications as to Plaintiff's income.
26  Defendants further instructed Plaintiff to sign the "closing documents" which, unbeknownst to
27  Plaintiff, included the loan application for his 5-YEAR ARM, Good Faith Estimate for his 5-YEAR
28  ARM, and TILA disclosures for his 5-YEAR ARM.

129.    Defendants intended that Plaintiff rely on the misrepresentations.

130.    Plaintiff reasonably relied on Defendants' misrepresentations.    Plaintiff relied on Defendants' misrepresentations because he thought Defendants were acting as his agent and in his best interests.

131.    Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**".

132.    As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained.    Plaintiff reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiff's damages.

133.    Defendants are guilty of malice, fraud or oppression, as defined in Civil Code § 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiff prays for relief as set forth below.

### EIGHTH CAUSE OF ACTION

#### Concealment

#### California Civil Code §§ 1709-1710;

#### (Against all Defendants)

134.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

135.    Defendants, and each of them, implemented their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above.

136.    Defendants knowingly and willfully induced Plaintiff to enter into the loan agreement by making false oral statements and omitting material information regarding the terms of the loan and Plaintiff's application.

137.    Defendants concealed, certain material facts from Plaintiff who was not aware of them including, but not limited to the following:

a. The true terms of Plaintiff's loan;

b. That Plaintiff was getting two (2) adjustable rate mortgages on his home, including a 5-YEAR ARM at 7.94% with negative amortization and a prepayment penalty;

c. That Plaintiff was not going to receive $5,000 at closing as Defendant SMITH promised;

d. That Defendants would charge a total closing fees of over $17,000 which were excessive and duplicative;

e. That Defendants had falsified Plaintiff's income on his loan application for the 5-YEAR ARM;

f. That Defendants instructed him to sign "closing documents" which unbeknownst to Plaintiff included the Good Faith Estimate, TILA disclosures, the loan application for the 5-YEAR ARM with the other closing documents;

g. That Defendants unlawfully instructed Plaintiff to back-date Good Faith Estimate, TILA disclosures, the loan application for the 5-YEAR ARM;

h. That the loan(s) presented at closing were not the 30-YEAR FIXED loan which Defendants' solicited, offered and promised Plaintiff;

i. That, with Plaintiff's 767 to 795 FICO credit scores and history was entitled to a 30-YEAR FIXED mortgage, and an overall less expensive loan;

j. That Plaintiff was not obligated to proceed with the loan;

k. That Plaintiff would divest all of the equity in his home that he earned under his previous loan;

l. That Plaintiff had a right to cancel the loan within three days;

m. Other Acts of which Plaintiff is presently unaware;

138.    Defendants were under a duty to disclose these facts to Plaintiff because of Defendants' fiduciary relationship with Plaintiff, yet Defendants chose to conceal or suppress these facts with intent to defraud.

139.   Plaintiff was unaware of the facts and reasonably relied on Defendants' deception in proceeding with the loan transactions because Plaintiff thought Defendants were acting as his agent and in his best interests.

140.   Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their **"2-part Deceptive Acts and Practices Predatory Lending Scheme"**.

141.   As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiff reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiff's damages.

142.   Defendants are guilty of malice, fraud or oppression, as defined in Civil Code § 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiff prays for relief as set forth below.

## NINTH CAUSE OF ACTION

### Negligent Misrepresentation

### California Civil Code §§ 1709-1710;

### (Against all Defendants)

143.   Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

144.   Defendants, and each of them, implemented their **"2-part Deceptive Acts and Practices Predatory Lending Scheme"** as alleged above.

145.   Also, Defendants falsely represented to Plaintiff, *inter alia*, the following: specifically, Defendants falsely represented that Plaintiff was to receive an overall "perfect" loan; that Defendants were going to put Plaintiff into a 30-YEAR FIXED mortgage; that Defendants were acting in the best interest of Plaintiff; and that Plaintiff would receive $5,000 at closing.

146.   Defendants had no reasonable basis for believing that the representations were true when the representations were made.

147. Defendants intended that Plaintiff rely on the misrepresentations.

148. Plaintiff reasonably relied on Defendants' misrepresentations. Plaintiff relied on Defendants' misrepresentations because he thought Defendants were acting as his agent and in his best interests.

149. Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**".

150. As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiff reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiff's damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

### TENTH CAUSE OF ACTION

#### Violation of California Civil Code § 1711 – Fraud on the Public;

#### (Against Defendants GOLDEN VALLEY/LENDING CENTER/SMITH)

151. Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

152. Defendants' targeted Plaintiff with advertisement flyers for their services and/or products. Defendants, and each of them, practiced a deceit with intent to defraud Plaintiff and the Public through their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above.

153. Defendants' fraud was the proximate cause of Plaintiff's damages as alleged herein.

154. Defendant were guilty of malice, fraud or oppression, as defined in Civil Code § 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiff prays for relief as set forth below.

//

//

## ELEVENTH CAUSE OF ACTION

### Rescission/Cancellation, California Civil Code § 1689,

### And Court's Inherent Equitable Authority;

### (Against all Defendants)

155.   Plaintiff hereby realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

156.   Plaintiff's consent to Defendants' OPTEUM/OIT loans were obtained by Defendants, and each of them, through mistake, fraud, and undue influence by the implementation of their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above.

157.   Defendants with intent to deceive Plaintiff and to unduly influence him to consent to the OPTEUM/OIT loans which Defendants knew or should have known Plaintiff did not understand or comprehend, and which Defendants knew or should have known Plaintiff did not have sufficient income to afford or pay, did fraudulently conceal from Plaintiff that Plaintiff was thereby placing his sole material possession, his home, and his equity, at severe risk of loss.

158.   The active misrepresentations of Defendants, and each of them, and their silence and deceit, were false and fraudulent.

159.   At the time Defendants, and each of them, made the misrepresentations and engaged in the concealment and deceit as alleged herein, and at the time Plaintiff signed any of the Loan Applications and/or the Loan Documents, Plaintiff did not know that the misrepresentations, deceit and inducements by Defendants were false and fraudulent, but instead believed them to be truthful and reasonably relied on them, thereby entering into the OPTEUM/OIT loans without the benefit of the true facts, and by duress, undue influence and coercion and mistake.

160.   As a result of the fraudulent misrepresentations, deceit and inducements by Defendants, and each of them, Plaintiff has incurred substantial financial damages as herein alleged.  Plaintiff hereupon serves notice of his demand for rescissionary damages on the grounds of fraudulent misrepresentations and inducement, duress, undue influence, coercion and mistake by Defendants, and each of them, as alleged herein.  To the extent Plaintiff's loan transactions documents contain an exculpatory clause in favor of Defendants purporting to release Defendants from their own fraud,

1  Plaintiff alleges that such a clause is unenforceable pursuant to Civil Code § 1668 and other applicable
2  law.

3      161.   Plaintiff hereby demands restitution from Defendants, and each of them, in an amount
4  that will restore to Plaintiff the amount of home equity he previously held prior to the OPTEUM/OIT
5  loans. Plaintiff further alleges that Defendants, and each of them, have been unjustly enriched by their
6  "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above, and that the
7  amount of all commissions earned by Defendants on the OPTEUM/OIT loans and all profits and
8  payments earned by Defendants as a result of the OPTEUM/OIT loans must be disgorged by
9  Defendants to Plaintiff.

10      WHEREFORE, Plaintiff prays for relief as set forth below.

11  **TWELFTH CAUSE OF ACTION**

12  **Breach of Fiduciary Duty;**

13  **(Against all GOLDEN VALLEY/LENDING CENTER/SMITH)**

14      162.   Plaintiff hereby realleges and incorporates by this reference all the allegations of the
15  preceding paragraphs of this Complaint as though fully set forth herein.

16      163.   California law imposes on the insurance agents/real estate agents/and mortgage brokers,
17  as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor
18  of a beneficiary.

19      164.   Defendants GOLDEN VALLEY/LENDING CENTER/SMITH, and each of them,
20  owed Plaintiff fiduciary duties of the utmost loyalty, good faith and diligence and breached those
21  duties by, *inter alia*:

22      a.   Implementing their "**2-part Deceptive Acts and Practices Predatory Lending
23      Scheme**" as alleged above;

24      b.   Baiting Plaintiff with their promises of a 30-YEAR FIXED mortgage which Defendants
25      had no intention of consummating for Plaintiff;

26      c.   Misleading Plaintiff to believe that his monthly mortgage payments according to their
27      promises would be lower than they ultimately were;

28      d.   Failing to explain the terms of the loan transaction to Plaintiff;

e.  Refusing to be present during Plaintiff's signing of closing documents;

f.  Inducing Plaintiff to sign loan documents by either misrepresenting the terms or failing to disclose the loan terms;

g.  Failing to disclose all the charges incurred in connection with the refinance;

h.  Disregarding Plaintiff's clear objective to purchase **only** a 30-YEAR FIXED mortgage;

i.  Counseling Plaintiff into purchasing a 5-YEAR ARM with higher payments than Plaintiff's original loan—the terms of which were unbeknownst to Plaintiff until after signing closing documents;

j.  Instructing Plaintiff to back-date the Loan Application, Good Faith Estimate ("**GFE**"), and TILA disclosures, of which consequence Plaintiff was not aware;

k.  Inducing Plaintiff to sign a loan that is more financially burdensome than the original 30-YEAR FIXED loan presented to Plaintiff.

l.  Guiding Plaintiff to a more expensive loan product so that Defendants could earn a higher commission by way of the Yield Spread Premium ("**YSP**");

m.  Falsifying Plaintiff's income and assets on his loan applications;

n.  Qualifying Plaintiff for more expensive loans where, because of Defendants' falsification of Plaintiff's income, the monthly payments consume almost the entirety of Plaintiff's monthly income.

165.    Defendants engaged in their conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable financial consequences to Plaintiff.

166.    Defendants GOLDEN VALLEY/LENDING CENTER/SMITH, and each of them, operated as agents of Defendant OPTEUM/OIT and abandoned their fiduciary duty to Plaintiff.

167.    Defendants failed to act diligently by failing to evaluate Plaintiff's ability to repay the loans, failing to disclose all material terms of the transaction, and failing to comply with applicable consumer protections intended to benefit Plaintiff.

168.    As a result of Defendants' breach of their fiduciary duties to Plaintiff, Plaintiff has sustained damages to be proved at trial but not yet ascertained.

169.   Defendants' conduct as alleged herein was a substantial factor in causing the damages sustained by Plaintiff, and as a direct, proximate and legal result of the above alleged breach of fiduciary duty, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, damages for loss of property and money, and damages for emotional distress.

170.   Defendants were guilty of malice, fraud or oppression, as defined in Civil Code § 3294, and where appropriate Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRTEENTH CAUSE OF ACTION

### Negligence;

### (Against all Defendants)

171.   Plaintiff hereby realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

172.   Because a mortgage loan broker and mortgage loan lender is required to exercise reasonable care and diligence in any transaction and is bound to exercise his or her skill for the benefit of the principal, the agent is liable for any damages suffered by the principal as a result of any negligence in the performance of his or her agency duties.

173.   Defendants, and each of them, owed Plaintiff a duty to act with that degree of skill, prudence and diligence as other mortgage brokers and lenders of ordinary skill and capacity in the performance of the services that they undertake.

174.   A reasonably prudent mortgage loan broker would not have implemented their "**2-part Deceptive Acts and Practices Predatory Lending Scheme**" as alleged above nor would they have directed Plaintiff to the OPTEUM/OIT loan products nor originated such loans.

175.   Defendant OPTEUM/OIT are secondarily liable for the actions of Defendants GOLDEN VALLEY/LENDING CENTER/SMITH, and OPTEUM/OIT also failed to properly consider, investigate, evaluate or audit Plaintiff's loan applications and/or ability to repay loans and/or the actions of their agents.

176.    Plaintiff is informed and believes that Defendant also failed to consider the usual underwriting factors for assessing creditworthiness when they loaned to Plaintiff, and in fact that Defendant GOLDEN VALLEY/LENDING CENTER/SMITH all falsified Plaintiff's loan applications and deceived Plaintiff as to the true terms of the loans.

177.    Defendants, and each of them, knew or should have known to utilize the best practices for underwriting, originating and issuing loans when considering the OPTEUM/OIT loans to Plaintiff but negligently failed to do so.

178.    Defendant GOLDEN VALLEY/LENDING CENTER/SMITH breached their duties by encouraging Plaintiff to sign for loans with different terms than the 30-YEAR FIXED mortgage they had represented to Plaintiff.

179.    By their conduct as alleged herein, Defendants were the proximate cause of damages sustained by Plaintiffs in an amount to be proven at trial but not yet ascertained.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTEENTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing;

### (Against OPTEUM/OIT)

180.    Plaintiff hereby realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

181.    The OPTEUM/OIT loans, including the promissory note and deed of trust, imposed upon Defendant OPTEUM/OIT a covenant of good faith and fair dealing when Defendant OPTEUM/OIT:

   a.  Prepared and directed Plaintiff to sign the loan application(s);

   b.  Secretly and fraudulently failed to take any steps to verify any of the information contained in the loan applications;

   c.  Approved the OPTEUM/OIT loans based on information they knew or should have known to be false and inaccurate;

   d.  Fraudulently induced  Plaintiff to accept the OPTEUM/OIT loans;

e.  Failed to disclose to Plaintiff that should he fail to pay the monthly loan payments, he would lose his home and all equity in his home as well;

f.  Overcharged for fees, commissions, points, YSP's and notary fees;

g.  Paying to Defendants GOLDEN VALLEY/SMITH fees, commissions, points, YSP's;

h.  Other acts of which Plaintiff is presently unaware.

182.  As a proximate result of the aforementioned acts and omissions by Defendant OPTEUM/OIT, Plaintiff has suffered loss of monies in a sum to be proven at the time of trial. It has also become reasonably necessary for Plaintiff to retain counsel to recover amounts due under the contract.

183.  The aforementioned acts were performed by Defendant OPTEUM/OIT maliciously, fraudulently and oppressively entitling Plaintiff to punitive damages in an amount appropriate to punish the Defendant.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress;

### (Against all Defendants)

184.  Plaintiff hereby realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

185.  Defendants, and each of them, acted with conscious and outrageous disregard towards Plaintiff by implementing their **"2-part Deceptive Acts and Practices Predatory Lending Scheme"** as alleged above, so as to foreseeably cause Plaintiff severe and enduring emotional distress including persistent and strong feelings of fear, shock, worry, anxiety, anger, depression, sadness, embarrassment, humiliation, shame and disappointment, constituting an extreme and outrageous invasion of Plaintiff's mental and emotional tranquility.

WHEREFORE, Plaintiff prays for relief as set forth below.

//

//

//

---

## PRAYER FOR RELIEF

**WHEREFORE, Mr. Burrows prays for judgment on the above causes of action against Defendants as follows:**

1.  That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367;

2.  That the Court declare that Defendants violated applicable provisions of federal and state law;

3.  That the Court enjoin all unlawful practices complained of in this action and impose affirmative injunctive relief requiring Defendants, their partners, agents, employees, assignees, and all person acting in concert or participating with them, to take affirmative action to immediately implement policies designed to ensure: (1) that all prospective borrowers' loan applications do not contain false information, (2) a thorough evaluation of all prospective borrowers' ability to repay any loans made available to them, (3) training regarding applicable lending laws for all of defendants' employees and agents;

4.  That the Court order Defendants to immediately rescind the loans and return all cost to Plaintiff associated with the loans; and that the Court order that if the loans have been sold, that OPTEUM/OIT be made to repurchase the loans and then rescind the loans and return all cost to Plaintiff associated with the loans;

5.  That the Court award monetary, statutory, compensatory, punitive damages, and treble damages, where appropriate, to Plaintiff according to proof;

6.  That the Court award damages under California Civil Code § 3345, where appropriate to Plaintiff according to proof;

7.  That the Court award Plaintiff costs of suit, including reasonable attorneys' fees; and

8.  That the Court award Plaintiff all other relief as the Court deems just.

//
//
//
//

---

**COMPLAINT ON PREDATORY LENDING AND ILLEGAL KICKBACKS**

DATED:  August __, 2007                    **THE JK LAW FIRM, APC**


By:_____
    Jonathan Kurniadi, Esq.
    *Attorneys for Plaintiff Michael Burrows*


## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

By:_____
    Jonathan Kurniadi, Esq.
    *Attorneys for Plaintiff Michael Burrows*

# ATTACHMENT "A"

THE LENDING CENTER

1900 SOUTH STATE COLLEGE BLVD. STE. 120
ANAHEIM, CA 92806
(800) 304-6051

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security prope located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower MICHAEL BURROWS                          Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA. | X Conventional | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | FHA | USDA/Rural Housing Service | | | 5221600915 |

| Amount | Interest Rate | No. of Months | Amortization Type: | X Fixed Rate | Other (explain): |
|---|---|---|---|---|---|
| $300,000.00 | 6.0000% | 360 | | GPM | ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Unit |
|---|---|
| 4255 33RD STREET UNIT 6, San Diego, CA 92104 | 1 |

| Legal Description of Subject Property (attach description if necessary)<br>SEE LEGAL DESCRIPTION ATTACHED | Year Built<br>1983 |
|---|---|

| Purpose of Loan | ☐ Purchase   ☐ Construction   ☐ Other (explain): | Property will be: | |
|---|---|---|---|
| | X Refinance   ☐ Construction-Permanent | X Primary Residence   ☐ Secondary Residence   ☐ Investment |

*Complete this line if construction or construction-permanent loan.*

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $0.00 |

*Complete this line if this is a refinance loan.*

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made   ☐ to be made |
|---|---|---|---|---|---|
| 2004 | $200,000.00 | $0.00 | Change In Rate/Term - No Cash Out | Cost: $ | |

| Title will be held in what Name(s) MICHAEL BURROWS | Manner in which Title will be held | Estate will be held<br>X Fee Simple |
|---|---|---|
| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) | | ☐ Leasehold (s<br>expiration da |

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| MICHAEL BURROWS | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. Scho |
|---|---|---|---|---|---|---|---|
| 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 | (619) 234-4422 | 11/28/1948 | 12.0 | | | | |

| ☐ Married   X Unmarried (include single, divorced, widowed)   ☐ Separated | Dependents (not listed by Co-Borrower)<br>no.   ages | ☐ Married   ☐ Unmarried (include single, divorced, widowed)   ☐ Separated | Dependents (not listed by Borrower)<br>no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)   ☐ Own  ☐ Rent   No. Yrs.<br>4255 33RD STREET UNIT 6<br>San Diego, CA 92104 | Present Address (street, city, state, ZIP)   ☐ Own  ☐ Rent   No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

*If residing at present address for less than two years, complete the following:*

| Former Address (street, city, state, ZIP)   ☐ Own  ☐ Rent   No. Yrs. | Former Address (street, city, state, ZIP)   ☐ Own  ☐ Rent   No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer   ☐ Self Employed | Yrs. on this job | Name & Address of Employer   ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| | Yrs. employed in this line of work/profession | | Yrs. employed in this lir of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

## IV. EMPLOYMENT INFORMATION (cont'd)

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 3,200.00 | $ | $ 3,200.00 | Rent | $ | |
| Overtime | | | 0.00 | First Mortgage (P&I) | | $ 1,798.65 |
| Bonuses | | | 0.00 | Other Financing (P&I) | | |
| Commissions | | | 0.00 | Hazard Insurance | | |
| Dividends/Interest | | | 0.00 | Real Estate Taxes | | |
| Net Rental Income | | | 0.00 | Mortgage Insurance | | |
| Other (before completing, see the notice in describe other income," below) | | | 0.00 | Homeowner Assn. Dues | | |
| | | | 0.00 | Other: | | |
| Total | $ 3,200.00 | $ | $ 3,200.00 | Total | $ | $ 1,798.65 |

*   **Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.**

**Describe Other Income**   *Notice:* **Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.**

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed  ☐ Jointly  ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, incl automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continu sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| *List checking and savings accounts below* | | **LIABILITIES** | **Monthly Payment & Months Left to Pay** | **Unpaid Balance** |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | Acct. no. | | |

Freddie Mac Form 65 7/05                                                          Fannie Mae Form 1003

ITEM 7300L2 (0508)                          *(Page 2 of 5 pages)*                GreatDocs™ • To Order Call: 1-800-968

## VI. ASSETS AND LIABILITIES (cont'd)

| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | |
|---|---|---|---|---|
| | | | | $ |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/ number & description) | $ | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| | | | | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | Acct. no. | | |
| **Subtotal Liquid Assets** | $ | Name and address of Company | $ Payment/Months | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | | | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| Automobiles owned (make and year) | $ | | | $ |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ | |
| **Total Assets a.** | $ | **Net Worth (a minus b)** ► | $ | **Total Liabilities b.** $ |

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |
| | | |

| ## VII. DETAILS OF TRANSACTION | | ## VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| a.  Purchase price | $ | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | **Borrower** | | **Co-Borrower** | |
| | | | Yes | No | Yes | No |
| b.  Alterations, improvements, repairs | | a.  Are there any outstanding judgments against you? | | X | | |
| c.  Land (if acquired separately) | | b.  Have you been declared bankrupt within the past 7 years? | | X | | |
| d.  Refinance (incl. debts to be paid off) | | c.  Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| e.  Estimated prepaid items | 1,500.00 | | | | | |
| f.  Estimated closing costs | 6,328.50 | d.  Are you a party to a lawsuit? | | X | | |
| g.  PMI, MIP, Funding Fee | | e.  Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | |
| h.  Discount (if Borrower will pay) | 3,000.00 | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| i.  Total costs (add items a through h) | 10,828.50 | | | | | |

## VII. DETAILS OF TRANSACTION (contd)

| | | |
|---|---|---|
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | |
| l. | Other Credits (explain) | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 300,000.00 |
| n. | PMI, MIP, Funding Fee financed | |
| o. | Loan amount (add m & n) | 300,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | 289,171.50 |

## VIII. DECLARATIONS (contd)

| If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X MICHAEL BURROWS | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | X I do not wish to furnish this information | CO-BORROWER | I do not wish to furnish this information |
|---|---|---|---|
| **Ethnicity:** Hispanic or Latino / Not Hispanic or Latino | | **Ethnicity:** Hispanic or Latino / Not Hispanic or Latino | |
| **Race:** American Indian or Alaska Native / Asian / Black or African American | | **Race:** American Indian or Alaska Native / Asian / Black or African American | |
| Native Hawaiian or Other Pacific Islander / White | | Native Hawaiian or Other Pacific Islander / White | |
| **Sex:** Female / Male | | **Sex:** Female / Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) Damien Mikkelsen | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail X Telephone ☐ Internet | Interviewer's Signature    Date 12/19/2006 | THE LENDING CENTER 5963 La Place Court Ste. 110 Carlsbad, California 92008 |
| | Interviewer's Phone Number (incl. area code) (866) 373-2486 | |

**CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION**

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B f or Borrower or C for Co-Borrower. | Borrower:<br><br>**MICHAEL BURROWS** | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number:<br><br>**5221600915** |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _____<br>**MICHAEL BURROWS** | | X _____ | |

# ATTACHMENT "B"

# GOOD FAITH ESTIMATE OF BORROWER'S SETTLEMENT COSTS

MICHAEL BURROWS
4255 33RD STREET UNIT 6
San Diego, CA 92104

[LENDER] LENDING CENTER
1[...] SOUTH STATE COLLEGE BLVD. STE. 120
ANAHEIM, CA 92806

Date of this Estimate 12/20/2006    Estimated Closing Date    Loan Officer  Damien Mikkelsen

Loan Program

| | | | | |
|---|---|---|---|---|
| Term | 360 | ; Rate | 6.0000 %; Origination Fee | 1.0000 %; Discount Fee | 1.0000 % |

Purchase Price / Value $    Loan Amount $ 200,000.00    Loan to Value  100.0000 %

Property Address  4255 33RD STREET UNIT 6, San Diego, CA 92104

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates — the actual charges may be more or less.  Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement which you will be receiving at settlement.  The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| 800.  ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | | 1006. | $ | 0.00 |
|---|---|---|---|---|---|---|
| 801. | Loan Origination Fee | 1.0000% | $ 3,000.00 | 1007. | $ | 0.00 |
| 802. | Loan Discount Fee | 1.0000% | $ 3,000.00 | 1008. | $ | 0.00 |
| 803. | Appraisal Fee | POC | $ 350.00 | 1100.  TITLE CHARGES: | | |
| 804. | Credit Report | | $ 0.00 | 1101.  Settlement Fee | $ | 350.00 |
| 805. | Lender's Inspection Fee | | $ 0.00 | 1102.  Abstract or Title Search | $ | 150.00 |
| 806. | Funding Fee to Lender | | $ 8.50 | 1103.  Title Examination | $ | 0.00 |
| 807. | | | $ | 1104.  Title Insurance Binder | $ | 0.00 |
| 808. | Tax Service Fee to First NLC | | $ 65.00 | 1105.  Document Preparation Fee | $ | 0.00 |
| 809. | Document Preparation Fee to First NLC | | $ 75.00 | 1106.  Notary Fee | $ | 0.00 |
| 810. | Flood Certification Fee to Lender | | $ 10.50 | 1107.  Attorney's Fee | $ | 0.00 |
| 811. | Underwriting Fee to First NLC | | $ 450.00 | 1108.  Title Insurance | $ | 750.00 |
| 812. | Administration Fee to Lender | | $ 445.00 | 1111.  Title Endorsements | $ | 0.00 |
| 813. | | | $ 0.00 | 1112. | $ | 0.00 |
| 814. | Document Delivery Fee to First NLC | | $ 24.50 | 1113.  Reconveyance Fee | $ | 150.00 |
| 815. | Processing Fee to First NLC | | $ 0.00 | 1200.  GOVERNMENT RECORDING AND TRANSFER CHARGES: | | |
| 900.  ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | | 1201.  Recording Fees | $ | 100.00 |
| 901.  Interest from | | | | Deed $    ; Mortgage $ | | |
| to | (30 days) at $ | 50.00 /day | $ 1,500.00 | Release $ | | |
| 902.  Mortgage Insurance Premium | | | $ 0.00 | 1202.  City / County Tax / Stamps | $ | 0.00 |
| 903.  Hazard Insurance Premium | | | $ 0.00 | Deed $    ; Mortgage $ | | |
| 904.  Flood Insurance Premium | | | $ 0.00 | Release $ | | |
| 905. | | | $ 0.00 | 1203.  State Tax / Stamps | $ | 0.00 |
| 1000.  RESERVES DEPOSITED WITH LENDER: | | | | Deed $    ; Mortgage $ | | |
| 1001.  Hazard Insurance Premium | | | $ 0.00 | 1204. | $ | 0.00 |
| months at $ | 0.00 /month | | | 1205. | $ | 0.00 |
| 1002.  Mortgage Insurance | | | $ 0.00 | 1300.  ADDITIONAL SETTLEMENT CHARGES: | | |
| months at $ | 0.00 /month | | | 1301.  Survey | $ | 0.00 |
| 1003.  City Property Taxes | | | $ 0.00 | 1302.  Pest Inspection | $ | 0.00 |
| months at $ | 0.00 /month | | | 1303. | $ | 0.00 |
| 1004.  County Property Taxes | | | $ 0.00 | 1304. | $ | 0.00 |
| months at $ | 0.00 /month | | | 1305. | $ | 0.00 |
| 1005.  Annual Assessments | | | $ 0.00 | 1400.  TOTAL ESTIMATED SETTLEMENT CHARGES: | $ | 8,978.50 |
| months at $ | 0.00 /month | | | | | |

| EST. MONTHLY PMT.: | | PPD. INT. & ESCROWS: | | ANNUAL AMOUNT: | | ANALYSIS OF ESTIMATED SETTLEMENT CHARGES: | |
|---|---|---|---|---|---|---|---|
| P & I | 1,798.65 | Ppd. Interest | 1,500.00 | | | | |
| R.E. Taxes | 0.00 | R.E. Taxes | 0.00 | R.E. Taxes | 0.00 | 1400.  Total Estimated Settlement Charges: $ | 8,978.50 |
| Hazard Ins. | 0.00 | Hazard Ins. | 0.00 | Hazard Ins. | 0.00 | | |
| Flood Ins. | 0.00 | Flood Ins. | 0.00 | Flood Ins. | 0.00 | Less: Prepaid Interest and Escrows $ | 0.00 |
| Mtg. Ins. | 0.00 | Mtg. Ins. | 0.00 | Mtg. Ins. | 0.00 | | |
| Other | 0.00 | Other | 0.00 | Other | 0.00 | = Other Estimated Settlement Charges: $ | 10,478.50 |
| Total Pmt. | 1,798.65 | Total Ppds. | 0.00 | | | | |

THIS SECTION TO BE COMPLETED ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED. Listed below are providers of service which we require you use.  The charges or ranges indicated in the Good Faith Estimate above are based upon the corresponding charge of the below designated providers.

Item No. 803    Name / Address DANIEL KOENN, APPRAISER  -CA-, 768 S. FIRCROFT AVE., COVINA, CA
Telephone (626) 858-0300    Relationship? [X] Yes [ ] No  Nature of Relationship: Done frequent business last 12 months

Item No. 1101    Name / Address COMMONWEALTH LAND TITLE INSURANCE  -CA-, 3021 CITRUS CIRCLE, WALNUT CREEK, CA, 94598
Telephone (925) 274-9701    Relationship? [X] Yes [ ] No  Nature of Relationship: Done frequent business last 12 months

Item No. 1108    Name / Address COMMONWEALTH LAND TITLE INSURANCE  -CA-, 3021 CITRUS CIRCLE, WALNUT CREEK, CA, 94598
Telephone (925) 274-9701    Relationship? [X] Yes [ ] No  Nature of Relationship: Done frequent business last 12 months

AGREEMENT:

You acknowledge you have received a copy of the HUD Special Information Booklet "Settlement Costs", if your application is to purchase residential real property and the Lender will take a first lien on the property.

If for any reason the loan you have applied for does not close, and if permitted by applicable law, you agree to reimburse the lender for any and all costs incurred to process your application including but not limited to appraisal, survey and title insurance.

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA).  Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.

APPLICANT  MICHAEL BURROWS                    DATE          APPLICANT                    DATE

APPLICANT                    DATE          APPLICANT                    DATE

AUTHORIZED OFFICIAL  Damien Mikkelsen

© GREATLAND 1995
ITEM 7719L0 (0511)

GREATLAND ▪
To Order Call: 1-800-530-9393 ▫ Fax 616-791-1131

# TRUTH-IN-LENDING DISCLOSURE FOR REAL ESTATE MORTGAGE LOANS

MICHAEL BURROWS
4255 33RD STREET UNIT 6
San Diego, CA 92104

LENDING CENTER
1900 SOUTH STATE COLLEGE BLVD. STE. 120
ANAHEIM, CA 92806

**PROPERTY ADDRESS** 4255 33RD STREET UNIT 6, San Diego, CA 92104 San Diego

| LOAN NUMBER | TRANSACTION DATE | | |
|---|---|---|---|
| 5221600915 | 12/20/2006 | [X] Preliminary | [ ] Final |

Words, numbers or phrases preceded by a [ ] are applicable only if the [ ] is marked.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| e 6.2972% | $ 356,843.94 e | $ 290,671.50 e | $ 647,515.44 e |

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning |
|---|---|---|
| e 359 | 1,798.65 | 2/1/2007 |
| 1 | 1,800.09 | 1/1/2037 |

**VARIABLE RATE:** [ ] Applicable [X] Not Applicable

The annual percentage rate may increase during the term of this transaction if the

increases. Please refer to the Adjustable Rate Mortgage Documents for specif

information concerning the variable rate provisions of this transaction. The rate may not increase more often than

and may not increase more than % per adjustment. Any increase will take the form of

. For exampl

[ ] This transaction is subject to a variable rate feature and is secured by your principal dwelling. Variable rate disclosures have been provided at an earlier time.

**PAYABLE ON DEMAND:** [ ] This obligation is payable on demand. [ ] The disclosures are based on an assumed maturity of one year.

Filing / Recording Fee $ 100.00

You may obtain property insurance from anyone acceptable to the lender.

**SECURITY:** You are giving a security interest in the real property and any of the following items which are checked:
[ ] Goods being purchased. [ ] Funds on deposit with the lender.
[X] Other (Specify) [ ] Collateral securing other loans with us may also secure this loan.

4255 33RD STREET UNIT 6, San Diego, CA, 92104

**LATE CHARGE:**
If you are more than **Zero** days late in making any payment, in addition to your payment, you will pay a late charge of:
[ ] the lesser of [ ] the greater of [X] an amount equal to [ ] $ or [X] **5.000** % of the payment in default.

**PREPAYMENT:**
If you pay off early, you [X] may [ ] will not have to pay a penalty.
[ ] may [X] will not be entitled to a refund of part of the finance charge.

**ASSUMPTION:**
If this loan is to purchase and is secured by your principal dwelling, and if checked here, [X] someone buying your
dwelling cannot assume the remainder of this purchase money mortgage loan on the original terms.
If this loan is to purchase and is secured by your principal dwelling, and if checked here, [ ] someone buying your
dwelling may, subject to conditions, be allowed to assume the remainder of this purchase money mortgage loan.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and Creditor's policy regarding assumption of the obligation. "e" means an estimate.

[X] Please refer to the "Good Faith Estimate" for a breakdown of fees, charges and amount financed.  [ ] Please refer to the Itemization of Amount Financed Statement.

**SIGNATURES:**
By signing you acknowledge receipt of a completed copy of this disclosure. You understand that this is not a contract and does not reflect all of the terms and conditions of the mortgage transaction to which the disclosures reflected on this form relate.

X _____  X _____
MICHAEL BURROWS            DATE              DATE

X _____  X _____
                          DATE              DATE

© GREATLAND 1995  ITEM 9199LO (9804)  GREATLAND ■ To Order Call: 1-800-530-9393 □Fax 616-791-113

# ATTACHMENT "C"

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____   Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|

| Amount $ 256,000 | Interest Rate 7.625 % | No. of Months 360/360 | Amortization Type: ☐ Fixed Rate  ☐ GPM  ☑ ARM (type): 5 YR ARM  ☐ Other (explain): |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP)

4255 33RD ST#6, SAN D[...]          No. of Units **1**

Legal Description of Subject      Year Built
**SEE PRELIM**                    **1983**

Purpose of Loan  ☐ Purc  ☑ Refi[...]        [residen]ce:  ☐ Secondary Residence  ☐ Investment

**Complete this line if con[...]**
Year Lot Acquired | Original Cos[...]       [Im]provements | Total (a+b)
                  | $                                      | $

**Complete this line if thi[...]**
Year Acquired **2004** | Original Co[...]    [Improvements] ☐ made  ☐ to be made
                       | $

Title will be held in what
**MICHAEL BURROWS**       [t]itle will be held  [hel]d in escrow

Estate will be held in:
☑ Fee Simple
☐ Leasehold (show expiration date)

Source of Down Payme[nt]
**Equity from Subject**

## III. BORROWER INFORMATION

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower [...] Jr. or Sr. if applicable) |
|---|---|
| **MICHAEL BURROWS** | |

| Social Security Number 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 | Home Phone (incl. area code) 619-222-6943 | DOB (mm/dd/yyyy) 11/28/1948 | Yrs. School 18 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| ☐ Married  ☑ Unmarried (include single, ☐ Separated  divorced, widowed) | | Dependents (not listed by Co-Borrower) no. **0**  ages **0** | | ☐ Married  ☐ Unmarried (include single, ☐ Separated  divorced, widowed) | | Dependents (not listed by Borrower) no.  ages | |
| Present Address (street, city, state, ZIP)  ☑ Own  ☐ Rent  **2.6** No. Yrs. **4255 33RD ST#6 SAN DIEGO, CA 92104** | | | | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | | | |
| Mailing Address, if different from Present Address | | | | Mailing Address, if different from Present Address | | | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  ___ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  ___ No. Yrs. |
|---|---|
| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  ___ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  ___ No. Yrs. |

*(Handwritten stamp overlay: "SOUTHLAND TITLE  DATE THESE  12/13/06  WWW.SOUTHLANDTITLE.COM")*

## IV. EMPLOYMENT INFORMATION

| Borrower | | | | Co-Borrower | | |
|---|---|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Yrs. on this job | | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |

**Borrower:**
Name & Address of Employer: S.D.S. ☐ Self Employed
8954 RIO SAN DIEGO DR#110
SAN DIEGO, CA 92107
Yrs. on this job: 4 yr(s)
Yrs. employed in this line of work/profession: 6

Position/Title/Type of Business: COMPUTER TECH
Business Phone (incl. area code): 619-682-7290

**Co-Borrower:**
Name & Address of Employer: ☐ Self Employed
Yrs. on this job:
Yrs. employed in this line of work/profession:
Position/Title/Type of Business:
Business Phone (incl. area code):

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,351.50 | $ | $ 5,351.50 | Rent | $ | |
| Overtime | 489.00 | | 489.00 | First Mortgage (P&I) | 940.00 | $ 1,626.67 |
| Bonuses | 630.00 | | 630.00 | Other Financing (P&I) | 203.00 | 421.17 |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | 287.41 | 287.41 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | 128.00 | 128.00 |
| | | | | Other: | | |
| Total | $ 6,470.50 | $ | $ 6,470.50 | Total | $ 1,558.41 | $ 2,463.25 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed [✓] Jointly  [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | **Monthly Payment & Months Left to Pay** | **Unpaid Balance** |
| *List checking and savings accounts below* | | Name and address of Company **DOWNEY S&L** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union **US BANK** | | | | |
| | | Acct. no. 9040707085 | * (940) | 252,609 |
| Acct. no. 165100505578 | $ 10,497 | Name and address of Company **WASHINGTON MUTUAL** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 100000000062659 | * (203) | 30,295 |
| Acct. no. | $ | Name and address of Company **CHASE** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 411816500657 | 10 /(R) | 50 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) **SCOTTRADE** | $ 5,777 | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $ 16,274 | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 320,000 | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) **PERSONAL PROPERTY** | $ 50,000 | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ 10 | |
| **Total Assets a.** | $ 386,274 | Net Worth (a minus b) $ 103,320 | **Total Liabilities b.** | $ 282,954 |

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 4255 33RD ST#6 SAN DIEGO, CA 92104 | CONDO | $ 320,000 | $ 274,500 | $ | $ 1,143 | $ 413 | $ |
| | | $ | $ | $ | $ | $ | $ |
| | | $ | $ | $ | $ | $ | $ |
| Totals | | $ 320,000 | $ 274,500 | $ | $ 1,143 | $ 413 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp3.frm 09/05

Page 3 of 5

Borrower
Co-Borrower

Freddie Mac Form 65   07/05

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 282,904.00 |
| e. Estimated prepaid items | 2,120.31 |
| f. Estimated closing costs | 11,886.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 296,910.31 |
| j. Subordinate financing | 47,000.00 |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| **New 2nd Mtg Closing Costs** | -251.40 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 256,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 256,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -5,838.29 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |
| (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question.. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** ☐ I do not wish to furnish this information

| Ethnicity: | ☐ Hispanic or Latino | ☑ Not Hispanic or Latino |
|---|---|---|
| Race: | ☐ American Indian or Alaska Native | ☐ Asian  ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☑ White |
| Sex: | ☐ Female | ☑ Male |

**CO-BORROWER** ☐ I do not wish to furnish this information

| Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino |
|---|---|---|
| Race: | ☐ American Indian or Alaska Native | ☐ Asian  ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☐ White |
| Sex: | ☐ Female | ☐ Male |

**To be Completed by Interviewer**
This application was taken by:
☐ Face-to-face interview
☐ Mail
☑ Telephone
☐ Internet

| Interviewer's Name (print or type) CHRISTINA SMITH | Name and Address of Interviewer's Employer GOLDEN VALLEY LENDING GROUP |
|---|---|
| Interviewer's Signature | 830 E. VISTA WAY #119 VISTA, CA 92084 |
| Interviewer's Phone Number (incl. area code) 760-407-1717 | (P) 760-407-1717 (F) 760-407-1722 |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp4.frm 09/05

Freddie Mac Form 65   07/05

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:<br>**MICHAEL BURROWS** | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 01/19/07 | X | |

Freddie Mac Form 65   07/05
CALYX Form Lnapocnt.frm 09/05

Fannie Mae Form 1003   07/05

# GOOD FAITH ESTIMATE

| | |
|---|---|
| Applicants: **MICHAEL BURROWS** | Application No: **BURROWS0107** |
| Property Addr: **4255 33RD ST#6, SAN DIEGO, CA 92104** | Date Prepared: **12/13/2006** |
| Prepared By: **GOLDEN VALLEY LENDING GROUP  Ph. 760-407-1717**<br>**830 E.VISTA WAY#119, VISTA, CA  92084** | Loan Program: **5 YEAR ARM** |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $ **256,000**   Interest Rate: **7.625** %   Term: **360 / 360** mths

## 800. ITEMS PAYABLE IN CONNECTION WITH LOAN

| | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 801 | Loan Origination Fee | **2.000%** | $ | 5,120.00 ✓ | | | |
| 802 | Loan Discount | | | | | | |
| 803 | Appraisal Fee | | | (450.00) ✓ | | | ✓ |
| 804 | Credit Report | | | 20.00 ✓ | | | |
| 805 | Lender's Inspection Fee | | | | | | |
| 808 | Mortgage Broker Fee | + $    960.00 | | 960.00 ✓ | | | |
| 809 | Tax Related Service Fee | | | 67.00 | | | |
| 810 | Processing Fee | | | 695.00 ✓ | | | |
| 811 | Underwriting Fee | | | 950.00 ✓ | | | |
| 812 | Wire Transfer Fee | | | 25.00 ✓ | | | |
| | | | | 10.00 | | | |

## 1100. TITLE CHARGES

| | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1101 | Closing  or  Escrow Fee: | | $ | 495.00 ✓ | | | |
| 1105 | Document Preparation Fee | | | 100.00 ✓ | | | |
| 1106 | Notary Fees | | | 150.00 ✓ | | | |
| 1107 | Attorney Fees | | | | | | |
| 1108 | Title Insurance: | | | 1,609.00 ✓ | | | |
| | WIRE | | | 25.00 ✓ | | | |
| | MISC ESCROW/ PAD | | | 360.00 ✓ | | | |

## 1200. GOVERNMENT RECORDING & TRANSFER CHARGES

| | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1201 | Recording Fees: | | $ | 100.00 ✓ | | | |
| 1202 | City/County Tax/Stamps: | | | | | | |
| 1203 | State Tax/Stamps: | | | | | | |

## 1300. ADDITIONAL SETTLEMENT CHARGES

| | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1302 | Pest Inspection | | $ | | | | |
| | INSURANCE PAD | | | 1,200.00 | | | |

| | |
|---|---|
| **Estimated Closing Costs** | **11,886.00** |

## 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE

| | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 901 | Interest for | **2** days @ $ | **54.2222** | per day | $ | 108.44 ✓ | | | |
| 902 | Mortgage Insurance Premium | | | | | | | | |
| 903 | Hazard Insurance Premium | | | | | | | | ✓ |
| 904 | | | | | | | | | |
| 905 | VA Funding Fee | | | | | | | | |

## 1000. RESERVES DEPOSITED WITH LENDER

| | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 1001 | Hazard Insurance Premium | 0 months @ $ | | per month | $ | | | | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | | per month | | | | | |
| 1003 | School Tax | months @ $ | | per month | | | | | |
| 1004 | Taxes and Assessment Reserves | 7 months @ $ | 287.41 | per month | | 2,011.87 ✓ | | | |
| 1005 | Flood Insurance Reserves | months @ $ | | per month | | | | | |
| | | months @ $ | | per month | | | | | |
| | | months @ $ | | per month | | | | | |

| | |
|---|---|
| **Estimated Prepaid Items/Reserves** | **2,120.31** |
| TOTAL  ESTIMATED  SETTLEMENT  CHARGES | **14,006.31** |

## COMPENSATION TO BROKER (Not Paid Out of Loan Proceeds)

| | |
|---|---|
| | $ |

## TOTAL ESTIMATED FUNDS NEEDED TO CLOSE

| | | | | TOTAL ESTIMATED MONTHLY PAYMENT | |
|---|---|---|---|---|---|
| Purchase Price/Payoff (+) | 282,904.00 | New First Mortgage(-) | | Principal & Interest | 1,626.67 |
| Loan Amount (-) | 256,000.00 | Sub Financing (-) | 47,000.00 | Other Financing (P & I) | 421.17 |
| Est. Closing Costs (+) | 11,886.00 | New 2nd Mtg Closing Costs(+) | 251.40 | Hazard Insurance | |
| Est. Prepaid Items/Reserves (+) | 2,120.31 | | | Real Estate Taxes | 287.41 |
| Amount Paid by Seller (-) | | | | Mortgage Insurance | |
| | | | | Homeowner Assn. Dues | |
| | | | | Other | 128.00 |

| | | | |
|---|---|---|---|
| Total Est. Funds to you | 5,838.29 | Total Monthly Payment | 2,463.25 |

☑ This Good Faith Estimate is being provided by **GOLDEN VALLEY LENDING GROUP**, a mortgage broker, and no lender has been obtained. These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

| | | | |
|---|---|---|---|
| _(signature)_ | 12/13/07 | | |
| Applicant  **MICHAEL BURROWS** | Date | Applicant | Date |

Calyx Form gfe.frm 11/01

CALYX SOFTWARE
MORTGAGE LOAN DISCLOSURE STATEMENT/GOOD FAITH ESTIMATE          Date Prepared: 12/13/2006

Borrower's Name(s):   **MICHAEL BURROWS**

Real Property Collateral: the intended security for this proposed loan will be a Deed of Trust on (street address or legal description)
**4255 33RD ST#6 SAN DIEGO, CA 92104**

This joint Mortgage Loan Disclosure Statement/Good Faith Estimate is being provided by   **GOLDEN VALLEY LENDING GROUP**
a real estate broker acting as a mortgage broker, pursuant to the Federal Real Estate Settlement Procedures Act (RESPA) and similar California law.
In a transaction subject to RESPA, a lender will provide you with an additional Good Faith Estimate within three business days of the receipt of
your loan application. You will also be informed of material changes before settlement/close of escrow. The name of the intended lender to whom
your loan application will be delivered is:

☐ Unknown      ☑ **TO BE DETERMINED** _____ (Name of lender, if known)

## GOOD FAITH ESTIMATE OF CLOSING COSTS

The information provided below reflects estimates of the charges you are likely to incur at the settlement of your loan. The fees, commissions,
costs and expenses listed are estimates; the actual charges may be more or less. Your transaction may not involve a charge for every item listed
and any additional items charged will be listed. The numbers listed beside the estimate generally correspond to the numbered lines contained
in the HUD-1 Settlement Statement in which case you will receive at settlement if this transaction is subject to RESPA. The HUD-1 Settlement Statement
contains the actual costs for the items paid at settlement. When this transaction is subject to RESPA, by signing page two of this form you are
also acknowledging receipt of the HUD Guide to Settlement Costs.

| HUD-1 | Item | | Paid to Others | Paid to Broker |
|---|---|---|---|---|
| 800 | Items Payable in Connection with Loan | | | |
| 801 | Lender's Loan Origination Fee      2.000% | | $    -3,840.00 | $    8,960.00 |
| 802 | Lender's Loan Discount Fee | | $ | $ |
| 803 | Appraisal Fee | | $    (450.00) | $ |
| 804 | Credit Report | | $    20.00 | $ |
| 805 | Lender's Inspection Fee | | $ | $ |
| 808 | Mtg Broker Commission/Fee      + $    960.00 | | $ | $    960.00 |
| 809 | Tax Service Fee | | $    67.00 | $ |
| 810 | Processing Fee | | $    695.00 | $ |
| 811 | Underwriting Fee | | $    950.00 | $ |
| 812 | Wire Transfer Fee | | $    25.00 | $ |
| ___ | | | $    10.00 | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| 900 | Items Required by Lender to be Paid in Advance | | | |
| 901 | Interest for     2 days at $    54.2222 per day | | $    108.44 | $ |
| 902 | Mortgage Insurance Premiums | | $ | $ |
| 903 | Hazard Insurance Premiums | | $ | $ |
| 904 | County Property Taxes | | $ | $ |
| 905 | VA Funding Fee | | $ | $ |
| 1000 | Reserves Deposited with Lender | | | |
| 1001 | Hazard Insurance:     0 months at $ _____ /mo. | | $ | $ |
| 1002 | Mortgage Insurance: _____ months at $ _____ /mo. | | $ | $ |
| 1003 | School Tax: _____ months at $ _____ /mo. | | $ | $ |
| 1004 | Co. Property Taxes:     7 months at $    287.41 /mo. | | $    2,011.87 | $ |
| 1005 | Flood Insurance: _____ months at $ _____ /mo. | | $ | $ |
| ___ | _____ months at $ _____ /mo. | | $ | $ |
| ___ | _____ months at $ _____ /mo. | | $ | $ |
| ___ | _____ months at $ _____ /mo. | | $ | $ |
| 1100 | Title Charges | | | |
| 1101 | Settlement or Closing/Escrow Fee: | | $    495.00 | $ |
| 1105 | Document Preparation Fee | | $    100.00 | $ |
| 1106 | Notary Fee | | $    150.00 | $ |
| 1108 | Title Insurance: | | $    1,609.00 | $ |
| ___ | **WIRE** | | $    25.00 | $ |
| ___ | **MISC ESCROW/ PAD** | | $    360.00 | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| 1200 | Government Recording and Transfer Charges | | | |
| 1201 | Recording Fees: | | $    100.00 | $ |
| 1202 | City/County Tax/Stamps: | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| 1300 | Additional Settlement Charges | | | |
| 1302 | Pest Inspection | | $ | $ |
| ___ | **INSURANCE PAD** | | $    1,200.00 | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |
| ___ | | | $ | $ |

Subtotal of Initial Fees, Commissions, Costs and Expenses       $    4,086.31      $    9,920.00

**Total of Initial Fees, Commissions, Costs and Expenses**                    $    14,006.31

Compensation to Broker (Not Paid Out of Loan Proceeds):
  Mortgage Broker Commission/Fee:                                 $ _____
  Any Additional Compensation from Lender   ☑ No ☐ Yes   $ _____   (If known)

Calyx Form - mlds1.frm (01/06)                    Page 1 of 2

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | | |
|---|---|---|---|
| Applicants: | **MICHAEL BURROWS** | Prepared By: | **GOLDEN VALLEY LENDING GROUP** |
| | | | 830 E.VISTA WAY#119 |
| Property Address: | **4255 33RD ST#6** | | VISTA , CA  92084 |
| | **SAN DIEGO, CA 92104** | | 760-407-1717 |
| Application No: | **BURROWS0107** | Date Prepared: | 12/13/2006 |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| *  16.917  % | $     *  1,619,797.56 | $      *  242,070.69 | $    *  1,861,868.25 |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit
**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| 60 | 1,626.67 | 03/01/2007 | | | | | | |
| | 3,797.77 | 03/01/2012 | | | | | | |
| 298 | 5,888.16 | 04/01/2012 | | | | | | |
| 1 | 5,798.60 | 02/01/2037 | | | | | | |

☑ **DEMAND FEATURE:** This obligation has a demand feature.
☑ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature.  A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature |
|---|---|---|
| Credit Life | | I want credit life insurance.             Signature: |
| Credit Disability | | I want credit disability insurance.       Signature: |
| Credit Life and Disability | | I want credit life and disability insurance.  Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☑ property  ☐ flood insurance from creditor you will pay $  1,536.00  for a one year term.
**SECURITY:**  You are giving a security interest in: 4255 33RD ST#6, SAN DIEGO CA 92104
☐ The goods or property being purchased   ☑ Real property you already own.
**FILING FEES:** $         100.00
**LATE CHARGE:**  If a payment is more than   15 days late, you will be charged     5.000 % of the payment
**PREPAYMENT:**  If you pay off early, you
☑ may       ☐ will not   have to pay a penalty.
☐ may       ☑ will not   be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may   ☐ may, subject to conditions     ☑ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate          ☑ all dates and numerical disclosures except the late payment disclosures are estimates.
* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | |
|---|---|---|
| _Michael Burrows_  12/13/07 | | |
| MICHAEL BURROWS    (Applicant)   (Date) | | (Applicant)   (Date) |
| (Applicant)   (Date) | | (Applicant)   (Date) |
| (Lender)   (Date) | | |

Calyx Form - til.hp (02/95)

# Borrower Signature Authorization

**Privacy Act Notice:** This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by  Title 38,  USC, Chapter 37 (if VA); by 12 USC,  Section 1701 et. seq. (if HUD/FHA);  by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et. seq., or 7 USC, 1921 et. seq. (if USDA/FmHA).

## Part I : General Information

| 1. Borrower | 2. Name and address of Lender/Broker |
|---|---|
| **MICHAEL BURROWS** <br><br> **4255 33RD ST#6** <br><br> **SAN DIEGO,  CA 92104** | **GOLDEN VALLEY LENDING GROUP** <br> **830 E.VISTA WAY#119** <br> **VISTA, CA 92084** <br> **TEL:  760-407-1717  FAX:  760-407-1722** |

| 3. Date | 4. Loan Number | |
|---|---|---|
| **12/13/2006** | **BURROWS0107** | |

## Part II : Borrower Authorization

I hereby authorize the Lender/Broker to verify my past and present employment earnings records,  bank accounts,  stock holdings,  and any other asset balances that are needed to process my mortgage loan application. I further authorize the Lender/Broker to order a consumer credit report and verify other credit information, including past and present mortgage and landlord references. It is understood that a copy of this form will also  serve  as  authorization.

The information the Lender/Broker obtains is only to be used in the processing of my application for a mortgage loan.

Borrower   MICHAEL BURROWS / SSN: 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                 Date   12/13/07

Calyx Form - bsa.hp (10/98)

# ATTACHMENT "D"



CALIFORNIA OVERNIGHT
800-334-5000
*Call For A Pickup!*

PROCESSING ETC#

VISTA

830    E. VISTA WAY    Suite 119

CA    92084    700 407 1717

PLEASE PRINT

MICHAEL BURROWS
3011 NEREIAS.
CA MESA
CA. 91941
JAMES G. BURROWS
LOAN DOCS

77514    B1018891668

01 01007    92897

B1018891668

**Service Options**
SURRISE - BY 10:30 AM
SURRISE GOLD - BY 8:00 AM
HEAVYWEIGHT
X Saturday Deliver _ Extra Charge
HOLD FOR PICKUP
C.O.D. Amount $ Limit $5,000

**Billing Information**    **Weight**
X Bill Shipper's Account Specify:
Bill Recipient Acct #    8 oz. Letter

Bill Third Party Acct #    Weight lbs.

Dim weight charge if greater than actual weight
L in.   X W in.   X H in.

Date #    Pickup Time    FIFJLOG

Rec'd.    JT GRAFF

CALIFORNIA OVERNIGHT COPY

# ATTACHMENT "E"

## NOTICE OF RIGHT TO CANCEL

LENDER: Opteum Financial Services, LLC

DATE 01/25/2007
LOAN NO. 1707104080
TYPE 50030A56LOC

BORROWERS/OWNERS Michael Burrows

ADDRESS       4255 33RD Street #6
CITY/STATE/ZIP San Diego, CA 92104
PROPERTY      4255 33RD Street #6, San Diego, CALIFORNIA 92104 San Diego

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)   The date of the transaction, which is January 25, 2007       ; or
(2)   The date you received your Truth in Lending disclosures; or
(3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:

**Opteum Financial Services, LLC**
**W115 Century Road Paramus, NEW JERSEY 07652**
**ATTN: RESCISSION DEPARTMENT**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 1/29/07 (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

| SIGNATURE | DATE 2/27/07 |
|---|---|

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

| BORROWER/OWNER | DATE 1/25/07 | BORROWER/OWNER | DATE |
|---|---|---|---|

| BORROWER/OWNER | DATE | BORROWER/OWNER | DATE |
|---|---|---|---|

-64 (0010)                    VMP MORTGAGE FORMS - (800)521-7291                    12/97



*IN10604*

# ATTACHMENT "F"



*Asset*
ESCROW SERVICES, INC.   707 Escondido Ave. • Suite 206 • Vista CA 92084 • (760) 630-1198 • Fax (760) 630-1351

**BORROWER STATEMENT**
Estimated

| | |
|---|---|
| Escrow Number:  016155-KM | Title Order Number: 15237072 |
| Escrow Officer:  Karen Maule | Date:  01/25/2007 - 3:30:00PM |
| | Closing Date:  01/31/2007 |

Borrower:   Michael Burrows

Property:   4255 33rd Street, #6, San Diego, CA  92104

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | |
| **TITLE CHARGES** | | |
| Lender/Mortgagee Premium for 256,000.00: Alliance Title Company | 1,339.00 | |
| Mortgage Recording Fee on 1st: Alliance Title Company | 75.00 | |
| Endorsement: Alliance Title Company | 150.00 | |
| Sub Escrow Fee: Alliance Title Company | 65.00 | |
| Mortgage Recording Fee on 2nd: Alliance Title Company | 75.00 | |
| Wire/Express: Alliance Title Company | 30.00 | |
| Courier fee: Alliance Title Company | 25.00 | |
| **ESCROW CHARGES TO: Asset Escrow Services, Inc.** | | |
| Escrow Fee | 495.00 | |
| Wire/Express | 25.00 | |
| Overnight Fee | 25.00 | |
| Miscellaneous Pad | 300.00 | |
| Digital Storage Fee | 35.00 | |
| **LENDER CHARGES** | | |
| New to Opteum Financial Services: | | 256,000.00 |
| County Taxes Reserves for 7 month(s) @ 287.41: Opteum Financial Services | 2,011.87 | |
| Interest Adjustment From 1/31/2007 To 2/01/2007, 2 Days, @ 53.4795/per day: Opteum Financial Services | 106.96 | |
| Flood Determination: First American Flood | 10.00 | |
| Tax Registration: Opteum Financial Services | 67.00 | |
| Appraisal: Golden Valley Lending Group POC $350.00 | | |
| Wire Fee: Opteum Financial Services | 25.00 | |
| Lender Funding Fee: Opteum Financial Services | 35.00 | |
| Administration Fee: Opteum Financial Services | 950.00 | |
| Yield Spread Premium: Golden Valley Lending Group POC $2,880.00 | | |
| Origination Fee: Golden Valley Lending Group | 5,120.00 | |
| Credit Report: Golden Valley Lending Group | 20.00 | |
| Administration Fee: Golden Valley Lending Group | 960.00 | |
| Processing Fee: Golden Valley Lending Group | 695.00 | |
| New to Opteum Financial Services: | | 47,000.00 |
| Interest Adjustment From 1/31/2007 To 2/01/2007, 2 Days, @ 13.1986/per day: Opteum Financial Services | 26.40 | |
| Administration Fee: Opteum Financial Services | 150.00 | |
| **LOAN PAYOFF: Downey Savings & Loan Association, F.A.** | | |
| Principal Balance | 250,929.08 | |
| Interest Per Diem From 1/01/2007 To 2/02/2007, 31 Days, @ 50.5065 | 1,565.70 | |
| Statement / Demand Fee | 60.00 | |
| Reconveyance Fee | 45.00 | |
| Recording Fee | 9.00 | |
| Total Loan Payoff | 252,608.78 | |
| **LOAN PAYOFF: Washington Mutual** | | |
| Principal Balance | 29,899.60 | |
| Interest Per Diem From 1/01/2007 To 2/02/2007, 31 Days, @ 12.4770 | 386.79 | |
| Reconveyance Fee | 9.00 | |
| Total Loan Payoff | 30,295.39 | |



*707 Escondido Ave. • Suite 206 • Vista CA 92084 • (760) 630-1198 • Fax (760) 630-1351*

**BORROWER STATEMENT**
Estimated

Escrow Number:   016155-KM
Page   2

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **ADDITIONAL DISBURSEMENTS:** | | |
| Notary Fee: To Be Determined | 150.00 | |
| Hazard Ins (Est - If Required): To Be Determined | 1,200.00 | |
| **BALANCE DUE YOU** | 5,929.60 | |
| TOTALS | 303,000.00 | 303,000.00 |

Michael Burrows

THIS IS AN ESTIMATED CLOSING STATEMENT FIGURES ARE SUBJECT TO CHANGE

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

OMB No. 2502-0265

**SETTLEMENT STATEMENT**

**Asset**
ESCROW SERVICES, INC.

| B. TYPE OF LOAN |
|---|
| 1. ☐ FHA   2. ☐ FHMA   3. ☒ CONV. UNINS. |
| 4. ☐ VA   5. ☐ CONV. INS. |
| 6. FILE NUMBER: 016155-KM   7. LOAN NUMBER 1707104080 |
| 8. MORTGAGE INS. CASE NO.: |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | |
|---|---|
| D. NAME & ADDRESS OF BORROWER: | Michael Burrows 4255 33rd Street, #6, San Diego, CA 92104 |
| E. NAME & ADDRESS OF SELLER: | |
| F. NAME & ADDRESS OF LENDER: | Opteum Financial Services, LLC 27422 Portola Parkway, Suite 200, Foothill Ranch, CA 92610 |
| G. PROPERTY LOCATION: | 4255 33rd Street, #6, San Diego, CA 92104 |
| H. SETTLEMENT AGENT: | Asset Escrow Services, Inc. |
| PLACE OF SETTLEMENT: | 707 Escondido Avenue, Suite 206, Vista, CA 92084 (760) 630-1198 |
| I. SETTLEMENT DATE: | 2/01/2007   Final |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 17,982.88 | 403. | |
| 104. Payoff To Downey Savings & Loan Association, F.A. | 252,709.79 | 404. | |
| 105. Payoff To Washington Mutual | 30,307.33 | 405. | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | **Adjustments For Items Paid By Seller In Advance:** | |
| 106. City/town taxes        to | | 406. City/town taxes        to | |
| 107. County taxes        to | | 407. County taxes        to | |
| 108. Assessments        to | | 408. Assessments        to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower:** | 301,000.00 | **420. Gross Amount Due To Seller:** | |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 256,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Amount Of 2nd loan | 47,000.00 | 504. Payoff 1st Ln. | |
| 205. | | 505. Payoff 2nd Mtg. Ln. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| **Adjustments For Items Unpaid By Seller:** | | **Adjustments For Items Unpaid By Seller:** | |
| 210. City/town taxes        to | | 510. City/town taxes        to | |
| 211. County taxes        to | | 511. County taxes        to | |
| 212. Assessments        to | | 512. Assessments        to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower:** | 303,000.00 | **520. Total Reductions In Amount Due Seller:** | |
| **300. Cash At Settlement From/To Borrower:** | | **600. Cash At Settlement From/To Seller:** | |
| 301. Gross amount due from borrower (line 120) | 301,000.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 303,000.00 | 602. Less reductions in amount due seller (line 520) | |
| **303. Cash ( ☐ FROM) ( ☒ TO) Borrower:** | 2,000.00 | **603. Cash ( ☐ TO) ( ☐ FROM) Seller:** | 0.00 |

Previous Edition Is Obsolete
Form No. 1581
3/86

SB-4-3538-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

**L.** SETTLEMENT CHARGES   Escrow: 016155-KM

| 700. Total Sales/Broker's Commission based on Price $ @ % | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| Division of Commission (line 700) As Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable In Connection With Loan:** | | | |
| 801. Loan Origination fee  2.0000         % Golden Valley Lending Group | | 5,120.00 | |
| 802. Loan Discount                % | | | |
| 803. Appraisal fee to: Golden Valley Lending Group POC    $350.00 | | | |
| 804. Credit report to: Golden Valley Lending Group | | 20.00 | |
| 805. Lender's inspection fee | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Assumption fee | | | |
| 808. Lender Funding Fee To: Opteum Financial Services, LLC | | 35.00 | |
| 809. Administration Fee To: Opteum Financial Services, LLC | | 950.00 | |
| 810. Administration Fee To: Golden Valley Lending Group | | 960.00 | |
| 811. Processing Fee To: Golden Valley Lending Group | | 695.00 | |
| 812. Administration Fee To: Opteum Financial Services, LLC on 2nd | | 150.00 | |
| 813. Yield Spread Premium To: Golden Valley Lending Group POC    $2,880.00 | | | |
| 814. Flood Determination To: First American Flood | | 10.00 | |
| 815. Tax Registration To: Opteum Financial Services, LLC | | 67.00 | |
| 816. Exhibit "B" Attached Hereto | | 5,881.22 | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest from        to        @$        /day        (0 days) | | | |
| 902. Mortgage insurance premium for        mo. to | | | |
| 903. Hazard insurance premium for        yrs. to | | | |
| 904. Flood insurance premium for        yrs. to | | | |
| 905. | | | |
| 906. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard insurance        months @ $        per month | | | |
| 1002. Mortgage insurance        months @ $        per month | | | |
| 1003. City property taxes        months @ $        per month | | | |
| 1004. County property taxes        7 months @ $    287.38 per month | | 2,011.66 | |
| 1005. Annual assessments        months @ $        per month | | | |
| 1006. Flood insurance        months @ $        per month | | | |
| 1007.        months @ $        per month | | | |
| 1008. Aggregate Adjustment | | | |
| 1009. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to Asset Escrow Services, Inc. | | 495.00 | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| (includes above item Numbers:                ) | | | |
| 1108. Title insurance to Alliance Title Company | | | |
| (includes above item Numbers:                ) | | 815.00 | |
| 1109. Lender's coverage  $ 256,000.00  Premium:   $815.00 | | | |
| 1110. Owner's coverage  $ | | | |
| 1111. Overnight Fee to Asset Escrow Services, Inc. | | 25.00 | |
| 1112. Digital Storage Fee to Asset Escrow Services, Inc. | | 35.00 | |
| 1113. Endorsement to Alliance Title Company | | 25.00 | |
| 1114. Exhibit "C" Attached Hereto | | 150.00 | |
| **1200. Government Recording and Transfer Charges:** | | | |
| 1201. Recording fees:  Deed $        ;Mortgage $   228.00        ;Releases $ | | 228.00 | |
| 1202. City/county tax/stamps; Deed $        ;Mortgage $ | | | |
| 1203. State tax/Stamps:        Deed $        ;Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. Notary Fee to Jessica Graf | | 225.00 | |
| 1304. HOA Cert to Christine Smith | | 85.00 | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| 1312. | | | |
| 1313. | | | |
| **1400. Total Settlement Charge** (Enter on line 103, Section J - and - line 502, Section K) | | 17,982.88 | |

Form No. 1582        Page 2 of 2        SB-4-3538-000-1

ATTACHMENT TO HUD 1
Settlement Date: 2/01/2007

Escrow No.:         016155-KM
Title No.:          15238382
Page:        1

| EXHIBIT A: (HUD Section 100) | Buyer Amount | Seller Amount |
|---|---|---|
| Gross Amount Due From Borrower - Loan Payoff Breakdown: | | |
| | | |
| **Downey Savings & Loan Association, F.A.** | | |
| Principal Balance To: Downey Savings & Loan Association, F.A. | 250,929.08 | |
| Interest Per Diem From  1/01/2007 to 2/03/2007 @ $      50.5065 To: Downey Savings & | 1,666.71 | |
| Statement / Demand Fee To: Downey Savings & Loan Association, F.A. | 60.00 | |
| Reconveyance Fee To: Downey Savings & Loan Association, F.A. | 45.00 | |
| Recording Fee To: Downey Savings & Loan Association, F.A. | 9.00 | |
| Total: | 252,709.79 | |
| | | |
| **Washington Mutual** | | |
| Principal Balance To: Washington Mutual | 29,899.60 | |
| Interest Per Diem From  1/01/2007 to  2/03/2007 @ $    12.4770 To: Washington Mutu | 398.73 | |
| Reconveyance Fee To: Washington Mutual | 9.00 | |
| Total: | 30,307.33 | |

| EXHIBIT B: (HUD Section 800 ) | Buyer Amount | Seller Amount |
|---|---|---|
| Items Payable In Connection With Loan: | | |
| | | |
| Wire Fee To: Opteum Financial Services, LLC | 25.00 | |
| Principal Reduction To: Opteum Financial Services, LLC | 5,856.22 | |
| Total: | 5,881.22 | |

| EXHIBIT C: (HUD Section 1100) | Buyer Amount | Seller Amount |
|---|---|---|
| Title Charges: | | |
| | | |
| Tax Report to Alliance Title Company | 7.00 | |
| Wire/Express to Alliance Title Company | 43.00 | |
| 2nd Loan Coverage $   47,000.00 Premium:   $100.00 To Alliance Title Company | 100.00 | |
| Total: | 150.00 | |

# ATTACHMENT "G"

>From: Christine Smith <su████an@yahoo.com>
>To: RATLNROLL@MSN.COM
>Subject: Keep missin you....christine smith
>Date: Thu, 15 Feb 2007 15:39:15 -0800 (PST)
>
>Mike
>
>Sorry...I did leave a vm msg on your black berry...I just remembered you
>can't retrieve them...in any case I have had phone problems Verizon is
>working on another phone for me...
>
>One the loan when we originally did it we did a no cash out loan to keep
>the rate down...the max you can get back on the loan like that is 2k that
>is why you only got the 2k...
>
>The title and escrow fees actually dropped from the original estimate...the
>other 5,881.22 that you where hoping to get back was applied back into the
>loan, see exhibit B HUD section 800, dropping your principal balance on the
>loan...so when Jessica talked to you...she did say you would get more back
>and you did. We just could not give the cash to you physically because of
>the type of loan we went for originally, no cash out...that part of the
>contract I cannot change after I have locked it...long story short we could
>only give you the max cash-out on a no cash out loan of 2k and the other
>5881.22 that could have come to you if we did a cash-out we had to give
>back to the bank, sorry. Good news is that it did drop your principal
>balance...if you have any questions it might be easier to email me right
>now...
>
>Sorry for the inconvenience:(:(
>
>Christine Smith
>
>
>
>_____
>8:00? 8:25? 8:40? Find a flick in no time
>with the Yahoo! Search movie showtime shortcut.
>http://tools.search.yahoo.com/shortcuts/#news

_____
Refi Now: Rates near 39yr lows!  $430,000 Mortgage for $1,399/mo - Calculate new payment
http://www.lowermybills.com/lre/index.jsp?sourceId=lmb-9632-17727&moid=7581

Thursday, February 22, 2007 AOL: SchneeweissJ

# ATTACHMENT "H"



**Opteum**
FINANCIAL SERVICES

Henry H. Cronk
Associate General Counsel

March 13, 2007

Jonathan Schneeweiss, Esq.
4620 Narragansett Avenue
San Diego, CA 92107

Re:    Loan #1707810480, 170710481 (the "Loans")
       4255 33rd Street #6, San Diego, California 92104 (the "Premises")
       Michael Burrows (the "Borrower")

Dear Mr. Schneeweiss:

Please know that your correspondence to Opteum Financial Services, LLC ("Opteum") dated February 27, 2007 has been forwarded to me for reply. In your correspondence you provided two Notices of Right To Cancel (the "Notices") executed by the Borrower with respect to each of the above referenced transactions and presumably seek on behalf of your client, cancellation of the Loans. In that regard, I note that the "I Wish To Cancel" signature line of the Notices was executed by your client on February 27, 2007, the date on which you faxed the Notices and approximately one month after your client acknowledged receipt of the Notices. In fact, you acknowledge in your correspondence that "[the] notices are delayed because Mr. Burrows was not properly noticed of his rights." You have not, however, supplied any documentation or evidence which confirms your assertion that the Borrower was not properly noticed nor does Opteum's review of the Loans support any such conclusion.

Based on the foregoing, this correspondence shall serve as notice that Opteum does not intend to honor the Borrower's purported rescission of the above referenced loans as the period during which the Borrower was able to exercise that right has expired. Further, please note that the Borrower remains fully obligated on the Loans and absent payment Opteum will have no alternative but to seek those remedies afforded to it pursuant to the promissory note and security instrument executed by the Borrower at closing.

Very truly yours,

Henry H. Cronk
Associate General Counsel

W115 Century Road  •  Paramus, NJ 07652
Phone: (201) 225-2906  •  Fax: (877) 219-7359  •  Web: www.opteum.com  •  NYSE: OPX

# ATTACHMENT "I"

### JONATHAN SCHNEEWEISS
### ATTORNEY AT LAW
**4620 Narragansett Avenue**
**San Diego, California 92107**
**619.279.3333**

VIA FACSIMILE AND FIRST CLASS MAIL
1-877-219-7359 Fax
Mr. Henry H. Cronk
Associate General Counsel
Opteum Financial Services
W115 Century Road
Paramus, N.J. 07652

March 30, 2007

RE:    Loan #1707810480, 170710481 (the "Loans")
       4255 33rd Street #6, San Diego, California 92104 (the "Premises")
       Michael Burrows (the "Borrower")

Dear Mr. Cronk:

Thank you for your response dated March 13, 2007, where you explained that Opteum Financial Services, LLC ("Opteum") could not yet cancel Michael Burrows' ("Michael") Loans because we did not provide evidence that his mortgage broker/lender failed to properly notify Michael of his right to cancel the Loans.

I represent Michael and this letter will serve to provide you with evidence to support Michael's position. Our ultimate goal is to get Michael into a loan that he can actually afford and would like to negotiations with Opteum Financial to reach mutually agreeable terms. After your review of the facts set forth below, and some of the supporting documents included with this letter, you will certainly agree that a more detailed investigation will be necessary if we cannot resolve this matter through simple negotiations.

*First Contact*

Some time in late November or early December of 2006, Christine Smith ("Ms. Smith") made contact with my client, Michael, in an attempt to convince Michael to refinance his house. Michael believes he received an advertising flyer in the mail which caused him to initiate contact with the Lending Center's office in Carlsbad, California (phone number 866-373-2486). At that time, Michael spoke with Ms. Smith and she took his initial information over the telephone and said she would be back in touch. At that time, Michael explained that he wanted a thirty year fixed rate mortgage. Ms. Smith assured my client that she would get back to him with pricing for that type of loan.

1

*Second and Third Contact by The Lending Center*

A few days later, Michael received a call from an individual named Damien Mikkelsen claiming to be from The Lending Center, the same company where Ms. Smith worked. Mr. Mikkelsen proceeded to take further information from Michael over the telephone. A few days after Mr. Mikkelsen took Michael's loan application over the telephone, Ms. Smith was back in touch with Michael. They had a conversation about the fact that Ms. Smith and Mr. Mikkelsen work for the same company.

Mr. Mikkelsen's conversation and my client's position that he wanted a 30 year fixed rate mortgage at six percent is evidenced by the Uniform Loan Application Mr. Mikkelsen took via telephone and mailed my client (see Exhibit "A" attached hereto).

As the holidays approached, my client did not have much communication, if any, with Mr. Mikkelsen and/or Ms. Smith. Ms. Smith assured Michael she was getting him a great deal and toward the end of January 2007, she called and advised my client that she found a loan for him and that it would be a five year adjustable rate mortgage. This was the first my client learned that the loan changed from a fixed rate mortgage. My client was a bit confused by her explanation. He did not hear from Ms. Smith again until a date was set for Michael to sign papers -- January 25, 2007 at 8 p.m. at Michael's home. The notary, Jessica Graf, showed up at that time for Michael to sign documents. Ms. Smith was *not* present during the time that Michael signed the documents for closing.

*The Meeting with the Notary*

The notary made clear to Michael that she could not answer his questions; she (Jessica Graf) explained that she was there just to get signatures. In fact, Michael asked the notary if she worked with Ms. Smith and her response was that, "she has worked with Ms. Smith *before*." The reality is that the notary works for the same company as Ms. Smith. We believe the notary was less than forthcoming with her relationship to Ms. Smith and arguably deceptive in her business practices.

During the time that the notary was at Michael's home, Michael had a question about the proceeds he was to receive back at the close of escrow. Because Ms. Smith was not present and the notary could not answer any questions, Michael called Ms. Smith. They had a brief discussion about any proceeds coming back to him after close of escrow, as Ms. Smith promised my client (see Exhibit "D" – "Good Faith Estimate" dated 12/13/07 because Ms. Smith directed my client to backdate the documents. See sticky note directing my client to backdate documents). Ms. Smith told my client she would get back to him on that issue. He hung up the phone. When another question came up during the closing Ms. Smith was no longer available via telephone.

After the notary, Jessica Graf, completed having Michael sign all the paperwork for refinance, she left with all of the papers.

2

*After the January 25, 2007 Meeting*

A few days after the, January 25, 2007, signing of documents, my client waited to hear back from Ms. Smith regarding his questions. He did not receive any calls or messages from Ms. Smith. In fact, my client made repeated attempts to make contact with Ms. Smith. She claimed she had phone problems (see her emails to Michael in Exhibit "B"). My client did not receive any explanation regarding his loan questions until February 15, 2007. She only made contact via email nearly two weeks after he signed papers for the refinance (see Exhibit "B").

*Confusion*

There are a number of other facts in question here regarding Ms. Smith and Mr. Mikkelsen's business practices. First, Mr. Mikkelsen took a loan application from my client indicating my client's initial desire to obtain a fixed rate mortgage. In fact, The Lending Center included a proposed interest rate of six percent fixed for thirty years in writing to my client on December 20, 2006 (see Exhibit "A").

Furthermore, at no time between December 20, 2006, and the date that my client signed his documents on January 25, 2007, did Ms. Smith, Golden Valley Lending, The Lending Center or Mr. Mikkelsen indicate in any way that Ms. Smith no longer worked at The Lending Center. What is even more questionable is that now when I call The Lending Center, Mr. Mikkelsen, I am told, is no longer working at The Lending Center. I was told that Mr. Mikkelsen and Ms. Smith were both let go for various reasons. When my client called to speak with Ms. Smith he was told she was fired or "let go."

*No Notices of Right to Cancel Were Left with Michael*

The following facts seem most disturbing and draw into question this entire transaction. At the time the notary showed up at my client's home at 8 p.m. at night on January 25, 2007, he was told the notary could *not* answer any of his questions *and* Ms. Smith was not available. Upon signing a large stack of papers for this closing, Ms. Graf, the notary, noticed that Golden Valley Lending did not have a complete set of documents to leave with my client. The notary even made a comment that it was odd that she did not have a full set of documents for my client to keep. As such, the notary left my client's home and took every single page my client was asked to sign during that meeting on January 25, 2007.

In that pile of documents, the notary took with her the notices where my client was, in writing, advised of his right to cancel within three days of certain events. Please review Exhibit "C" attached hereto. Exhibit "C" is a copy of the front of the envelope my client received at his parent's home from the "Processing Center" in Vista, California. The envelope is from California Overnight. The telephone number is the same as that for Golden Valley Lending and the shipping invoice indicates that it was my client's loan documents he signed on January 25, 2007.

3

On or about January 27, 2007, Michael received a large stack of documents from Golden Valley Lending. Michael took a cursory review of the loan and closing statements and was still perplexed about the change in the loan, the fees and why he was not getting cash back as he had been promised verbally by Ms. Smith on several occasions.

Michael made several attempts to reach Ms. Smith after realizing the terms of the loan were nothing like she had represented to him verbally. The loan was different in many ways. The interest rate was dramatically higher than quoted over the phone (particularly high for someone with excellent credit like Michael).

The loan paperwork flashed before Michael's face on January 25, 2007, was different than that previously presented by Ms. Smith. (See Exhibit "A"). The interest rate was higher than originally discussed, pre-payment penalties were incorporated into the terms of the note and, most notably, Ms. Smith put Michael into a loan with negative amortization.

My client saw the monthly payments and almost fell of his chair. There was no way he would be able to afford the loans she proposed. My client's income is $3,200 gross each month, as he stated on his telephone phone intake with Mr. Mikkelson from The Lending Center. (see Exhibit "A" page 2). The payments Michael is required to make as per Ms. Smith's loans are approximately $2,300 per month. After taxes and payment of his new loan amounts, Michael is left with $300 per month to live. His previous loan payment was less than $1,700.00 per month before he met Ms. Smith.

### Someone Directed Michael to Back-Date Documents/The Notary Was Present

This entire transaction is further concerning when you review how Ms. Smith, or someone from Golden Valley Lending, directed my client to sign paperwork on January 25, 2007. If you take a look at Exhibit "D", attached hereto, you will see that Ms. Smith had my client sign a new Uniform Residential Loan Application that she completed and sent with the notary on January 25, 2007.

Ms. Smith left a sticky note on the application and directed the notary to have my client date the application December 13, 2006. (See Exhibit "D" – also note that my client dated the documents December 2007 and not 2006, which further evidences that he did not really sign that loan application on 12/13/06 like Ms. Smith wants everyone to believe). After he received the documents later, my client discovered that Ms. Smith changed the amount that he claimed to earn as a living. She also provided a Good Faith Estimate which shows my client getting $5,838.29 back at close of escrow.

We know my client never received this $5,838.29 at close of escrow. In fact, that is why he called Ms. Smith during the closing. He was told she would get back to him on that issue. My client's version of the fact is supported by Ms. Smith's emails to my client where she did not explain any of this deal until February 15, 2007. (see Exhibit "B"). She explained this to my client via email only. She further explained in her February 15,

4

2007, email that Jessica had discussed some of these issues with my client at various points during the transaction, but then when it came time to sign papers Jessica would not answer any questions. This further supports our position that something deceptive was going on here.

From January 27, 2007, until approximately February 21, 2007, my client tried in vain to reach Ms. Smith or someone at Golden Valley Lending that could help him. It was not until I was retained and reviewed his file that I determined Ms. Smith had buried the notice of the right to cancel amongst all of the other paperwork she failed to explain to him during the closing.

My client was not aware that he had the right to cancel. The actions of the parties here seem to indicate that my client was not well informed about his rights. He was not given clear and conspicuous notice of his right to cancel. The actions of the parties involved appears to be confusing and potentially intentionally deceptive.

As you are well aware, there are various federal and state laws that have been enacted protect consumers in this type of transaction involving a person's primary residence. The spirit of those laws is intended to protect consumers from unfair and deceptive practices. We believe it is important to review this entire transaction to see that the actions of The Lending Center, Golden Valley Lending and their employees' actions appear to have been deceptive and misleading. Ms. Smith appears to have directed people to backdate documents. She buried the notice to cancel amongst loads of documents and was not available for several weeks after close of escrow to answer my client's questions.

### *Requested Resolution*

At this point, my client would simply like to get his property refinanced and avoid going bankrupt trying to make the payments for the loans Ms. Smith put him in on January 25, 2007. We hope that will not have to go any further with this matter as there are material issues of fact here that could take months or years to resolve. This would be a waste of resources for all parties involved and would far outweigh the benefit to either party. As such, we would welcome the opportunity to begin negotiations on a refinance for Michael.

5

We are certain this matter can be resolved without protracted litigation, or other legal action. If we can provide you with any further documentation that will help you evaluate the situation, please call me at 619-279-3333.

Very Truly Yours,

Jonathan Schneeweiss

Cc:     The Lending Center
        Golden Valley Lending

6

ATTACHMENT "J"

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT:
    Opteum Financial Services, LLC - San Diego Operations Center
    2020 Camino Del Rio North Suite 300 San Diego, CALIFORNIA 92108

BORROWERS: Michael Burrows

☐ Preliminary ☒ Final
*DATE:* 01/25/2007
*LOAN NO.:* 1707104080
*Type of Loan:* Conventional
    50030A56LOC

      7.625%

ADDRESS: 4255 33RD Street #6
CITY/STATE/ZIP: San Diego, CA 92104
PROPERTY: 4255 33RD Street #6, San Diego, CALIFORNIA 92104

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.9410 % | $ 506,443.88 | $ 246,358.64 | $ 752,802.52 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE Monthly BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE Monthly BEGINNING |
|---|---|---|---|---|---|
| 59 | 986.67 | Mar 1st, 2007 | | | |
| 70 | 1,865.11 | May 1st, 2012 | | | |
| 239 | 2,387.13 | Mar 1st, 2017 | | | |
| 1 | 2,385.95 | Feb 1st, 2037 | | | |

DEMAND FEATURE:  ☒ This loan does not have a Demand Feature.    ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY:  You are giving a security interest in the property located at: 4255 33RD Street #6, San Diego, CALIFORNIA 92104

ASSUMPTION:  Someone buying this property  ☒ cannot assume the remaining balance due under original mortgage terms
  ☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:  $  100.00

PROPERTY INSURANCE:  ☒ Property hazard insurance with a mortgage clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is . ☒ is not available through the lender at an estimated cost of $ $0.00 for a 0.00 year term.

LATE CHARGES:  If your payment is more than 15 days late, you will be charged a late charge of 5.000 % of the overdue payment.

PREPAYMENT:  If you pay off your loan early, you
☒ may ☐ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Michael Burrows    1/25/07    BORROWER / DATE           BORROWER / DATE

BORROWER / DATE           BORROWER / DATE



# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT:

Opteum Financial Services, LLC - San Diego Operations Center
2020 Camino Del Rio North Suite 300 San Diego, CALIFORNIA 92108

☐ Preliminary ☒ Final
DATE: 01/25/2007
LOAN NO.: 1707104081
Type of Loan: Conventional

BORROWERS: Michael Burrows

50020F2ndI

10.250%

ADDRESS: 4255 33RD Street #6
CITY/STATE/ZIP: San Diego, CA 92104
PROPERTY: 4255 33RD Street #6, San Diego, CALIFORNIA 92104

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.3602 % | $ 69,764.09 | $ 46,532.61 | $ 116,296.70 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 60 | 401.46 | Mar 1st, 2007 | | | |
| 179 | 510.28 | Mar 1st, 2012 | | | |
| 1 | 510.98 | Feb 1st, 2027 | | | |

DEMAND FEATURE: ☒ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☐ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 4255 33RD Street #6, San Diego, CALIFORNIA 92104

ASSUMPTION: Someone buying this property ☒ cannot assume the remaining balance due under original mortgage terms
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $ 75.00

PROPERTY INSURANCE: ☒ Property hazard insurance with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is ☒ is not available through the lender at an estimated cost of $ $0.00 for a 0.00 year term.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 5.000 % of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☒ may ☐ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____ 1/25/67
Michael Burrows                 BORROWER / DATE         _____ BORROWER / DATE

_____                         _____
BORROWER / DATE                                         BORROWER / DATE



# ATTACHMENT "**K**"

## AMORTIZATION SCHEDULE

Loan Information:
Purchase Price: 0
Down Payment: 0
Original Balance: 256,000.00
Term in Months: 360
Interest Rate: 7.625

| Payment No. | P & I | Principal | Interest | Mortgage Insurance | Balance | Resulting LTV |
|---|---|---|---|---|---|---|
| 1 | $986.67 | $-640.00 | $1,626.67 | $0.00 | $256,640.00 | 80.1999 |
| 2 | $986.67 | $-644.06 | $1,630.73 | $0.00 | $257,284.06 | 80.4012 |
| 3 | $986.67 | $-648.16 | $1,634.83 | $0.00 | $257,932.22 | 80.6038 |
| 4 | $986.67 | $-652.27 | $1,638.94 | $0.00 | $258,584.49 | 80.8076 |
| 5 | $986.67 | $-656.42 | $1,643.09 | $0.00 | $259,240.91 | 81.0127 |
| 6 | $986.67 | $-660.59 | $1,647.26 | $0.00 | $259,901.50 | 81.2192 |
| 7 | $986.67 | $-664.79 | $1,651.46 | $0.00 | $260,566.29 | 81.4269 |
| 8 | $986.67 | $-669.01 | $1,655.68 | $0.00 | $261,235.30 | 81.6360 |
| 9 | $986.67 | $-673.26 | $1,659.93 | $0.00 | $261,908.56 | 81.8464 |
| 10 | $986.67 | $-677.54 | $1,664.21 | $0.00 | $262,586.10 | 82.0581 |
| 11 | $986.67 | $-681.85 | $1,668.52 | $0.00 | $263,267.95 | 82.2712 |
| 12 | $986.67 | $-686.18 | $1,672.85 | $0.00 | $263,954.13 | 82.4856 |
| 13 | $986.67 | $-690.54 | $1,677.21 | $0.00 | $264,644.66 | 82.7014 |
| 14 | $986.67 | $-694.93 | $1,681.60 | $0.00 | $265,339.59 | 82.9186 |
| 15 | $986.67 | $-699.34 | $1,686.01 | $0.00 | $266,038.93 | 83.1371 |
| 16 | $986.67 | $-703.79 | $1,690.46 | $0.00 | $266,742.72 | 83.3570 |
| 17 | $986.67 | $-708.26 | $1,694.93 | $0.00 | $267,450.98 | 83.5784 |
| 18 | $986.67 | $-712.76 | $1,699.43 | $0.00 | $268,163.73 | 83.8011 |
| 19 | $986.67 | $-717.29 | $1,703.96 | $0.00 | $268,881.02 | 84.0253 |
| 20 | $986.67 | $-721.84 | $1,708.51 | $0.00 | $269,602.87 | 84.2508 |
| 21 | $986.67 | $-726.43 | $1,713.10 | $0.00 | $270,329.30 | 84.4779 |
| 22 | $986.67 | $-731.05 | $1,717.72 | $0.00 | $271,060.34 | 84.7063 |
| 23 | $986.67 | $-735.69 | $1,722.36 | $0.00 | $271,796.04 | 84.9362 |
| 24 | $986.67 | $-740.37 | $1,727.04 | $0.00 | $272,536.40 | 85.1676 |
| 25 | $986.67 | $-745.07 | $1,731.74 | $0.00 | $273,281.48 | 85.4004 |
| 26 | $986.67 | $-749.81 | $1,736.48 | $0.00 | $274,031.28 | 85.6347 |
| 27 | $986.67 | $-754.57 | $1,741.24 | $0.00 | $274,785.85 | 85.8705 |
| 28 | $986.67 | $-759.37 | $1,746.04 | $0.00 | $275,545.22 | 86.1078 |
| 29 | $986.67 | $-764.19 | $1,750.86 | $0.00 | $276,309.41 | 86.3466 |
| 30 | $986.67 | $-769.05 | $1,755.72 | $0.00 | $277,078.45 | 86.5870 |
| 31 | $986.67 | $-773.93 | $1,760.60 | $0.00 | $277,852.39 | 86.8288 |
| 32 | $986.67 | $-778.85 | $1,765.52 | $0.00 | $278,631.24 | 87.0722 |
| 33 | $986.67 | $-783.80 | $1,770.47 | $0.00 | $279,415.04 | 87.3171 |
| 34 | $986.67 | $-788.78 | $1,775.45 | $0.00 | $280,203.82 | 87.5636 |
| 35 | $986.67 | $-793.79 | $1,780.46 | $0.00 | $280,997.61 | 87.8117 |
| 36 | $986.67 | $-798.84 | $1,785.51 | $0.00 | $281,796.44 | 88.0613 |
| 37 | $986.67 | $-803.91 | $1,790.58 | $0.00 | $282,600.36 | 88.3126 |
| 38 | $986.67 | $-809.02 | $1,795.69 | $0.00 | $283,409.37 | 88.5654 |
| 39 | $986.67 | $-814.16 | $1,800.83 | $0.00 | $284,223.54 | 88.8198 |
| 40 | $986.67 | $-819.33 | $1,806.00 | $0.00 | $285,042.87 | 89.0758 |
| 41 | $986.67 | $-824.54 | $1,811.21 | $0.00 | $285,867.41 | 89.3335 |
| 42 | $986.67 | $-829.78 | $1,816.45 | $0.00 | $286,697.19 | 89.5928 |
| 43 | $986.67 | $-835.05 | $1,821.72 | $0.00 | $287,532.24 | 89.8538 |
| 44 | $986.67 | $-840.36 | $1,827.03 | $0.00 | $288,372.60 | 90.1164 |
| 45 | $986.67 | $-845.70 | $1,832.37 | $0.00 | $289,218.30 | 90.3807 |
| 46 | $986.67 | $-851.07 | $1,837.74 | $0.00 | $290,069.37 | 90.6466 |
| 47 | $986.67 | $-856.48 | $1,843.15 | $0.00 | $290,925.85 | 90.9143 |
| 48 | $986.67 | $-861.92 | $1,848.59 | $0.00 | $291,787.77 | 91.1836 |
| 49 | $986.67 | $-867.40 | $1,854.07 | $0.00 | $292,655.16 | 91.4547 |
| 50 | $986.67 | $-872.91 | $1,859.58 | $0.00 | $293,528.07 | 91.7275 |
| 51 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.07 | 91.7275 |
| 52 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.07 | 91.7275 |
| 53 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.06 | 91.7275 |
| 54 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.06 | 91.7275 |
| 55 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.06 | 91.7275 |
| 56 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.05 | 91.7275 |
| 57 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.05 | 91.7275 |
| 58 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.04 | 91.7275 |
| 59 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.04 | 91.7275 |
| 60 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.04 | 91.7275 |
| 61 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.03 | 91.7275 |
| 62 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.03 | 91.7275 |
| 63 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.02 | 91.7275 |
| 64 | $1,865.13 | $0.00 | $1,865.13 | $0.00 | $293,528.02 | 91.7275 |

5 yrs fixed
Why only 50 months ?



## AMORTIZATION SCHEDULE

Loan Information:
Purchase Price: 0
Down Payment: 0
Original Balance: 47,000.00
Term in Months: 240
Interest Rate: 10.250

*20yrs never discussed (30yrs)* (handwritten)

| Payment No. | P & I | Principal | Interest | Mortgage Insurance | Balance | Resulting LTV |
|---|---|---|---|---|---|---|
| 1 | $401.46 | $0.00 | $401.46 | $0.00 | $47,000.00 | 14.6874 |
| 2 | $401.46 | $0.00 | $401.46 | $0.00 | $47,000.00 | 14.6874 |
| 3 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.99 | 14.6874 |
| 4 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.99 | 14.6874 |
| 5 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.99 | 14.6874 |
| 6 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.99 | 14.6874 |
| 7 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.99 | 14.6874 |
| 8 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.99 | 14.6874 |
| 9 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.98 | 14.6874 |
| 10 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.98 | 14.6874 |
| 11 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.98 | 14.6874 |
| 12 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.98 | 14.6874 |
| 13 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.98 | 14.6874 |
| 14 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.98 | 14.6874 |
| 15 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.97 | 14.6874 |
| 16 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.97 | 14.6874 |
| 17 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.97 | 14.6874 |
| 18 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.97 | 14.6874 |
| 19 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.97 | 14.6874 |
| 20 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.96 | 14.6874 |
| 21 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.96 | 14.6874 |
| 22 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.96 | 14.6874 |
| 23 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.96 | 14.6874 |
| 24 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.95 | 14.6874 |
| 25 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.95 | 14.6874 |
| 26 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.95 | 14.6874 |
| 27 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.95 | 14.6874 |
| 28 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.95 | 14.6874 |
| 29 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.95 | 14.6874 |
| 30 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.94 | 14.6874 |
| 31 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.94 | 14.6874 |
| 32 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.94 | 14.6874 |
| 33 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.94 | 14.6874 |
| 34 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.93 | 14.6874 |
| 35 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.93 | 14.6874 |
| 36 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.93 | 14.6874 |
| 37 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.93 | 14.6874 |
| 38 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.93 | 14.6874 |
| 39 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.92 | 14.6874 |
| 40 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.92 | 14.6874 |
| 41 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.92 | 14.6874 |
| 42 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.92 | 14.6874 |
| 43 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.91 | 14.6874 |
| 44 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.91 | 14.6874 |
| 45 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.91 | 14.6874 |
| 46 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.91 | 14.6874 |
| 47 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.90 | 14.6874 |
| 48 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.90 | 14.6874 |
| 49 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.90 | 14.6874 |
| 50 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.90 | 14.6874 |
| 51 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.89 | 14.6874 |
| 52 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.89 | 14.6874 |
| 53 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.89 | 14.6874 |
| 54 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.89 | 14.6874 |
| 55 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.88 | 14.6874 |
| 56 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.88 | 14.6874 |
| 57 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.88 | 14.6874 |
| 58 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.88 | 14.6874 |
| 59 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.87 | 14.6874 |
| 60 | $401.46 | $0.00 | $401.46 | $0.00 | $46,999.87 | 14.6874 |
| 61 | $512.28 | $110.82 | $401.46 | $0.00 | $46,889.05 | 14.6528 |
| 62 | $512.28 | $111.77 | $400.51 | $0.00 | $46,777.28 | 14.6178 |
| 63 | $512.28 | $112.72 | $399.56 | $0.00 | $46,664.55 | 14.5826 |
| 64 | $512.28 | $113.69 | $398.59 | $0.00 | $46,550.87 | 14.5471 |

-1983 (9906)
VMP MORTGAGE FORMS - (800)521-7291
6/99



# ATTACHMENT "L"

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____    Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☑ Conventional   ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA   ☐ USDA/Rural Housing Service | | |

| Amount $ 256,000 | Interest Rate 7.625 % | No. of Months 360/360 | Amortization Type: | ☐ Fixed Rate   ☐ Other (explain): |
|---|---|---|---|---|
| | | | | ☐ GPM   ☑ ARM (type): 5 YR ARM |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) **4255 33RD ST#6, SAN DIEGO, CA 92104   County: SAN DIEGO** | No. of Units 1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) **SEE PRELIM** | Year Built 1983 |

| Purpose of Loan | ☐ Purchase   ☐ Construction   ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☑ Refinance   ☐ Construction-Permanent | ☑ Primary Residence ☐ Secondary Residence ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2004 | Original Cost $ 305,000 | Amount Existing Liens $ 274,500 | Purpose of Refinance Cash-Out/Home Improvement | Describe Improvements Cost: $ | ☐ made ☐ to be made |
|---|---|---|---|---|---|

| Title will be held in what Name(s) **MICHAEL BURROWS** | Manner in which Title will be held **To be determined in escrow** | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)
**Equity from Subject Property**

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) **MICHAEL BURROWS** | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) 619-222-6943 | DOB (mm/dd/yyyy) 11/28/1948 | Yrs. School 18 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married   ☑ Unmarried (include single, | Dependents (not listed by Co-Borrower) | ☐ Married   ☐ Unmarried (include single, | Dependents (not listed by Borrower) |
|---|---|---|---|
| ☑ Separated   divorced, widowed) | no. 0   ages 0 | ☐ Separated   divorced, widowed) | no.   ages |

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 2.6 No. Yrs. **4255 33RD ST#6 SAN DIEGO, CA 92104** | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|
| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp1.frm 09/05

Page 1 of 5

Borrower   *MJB*
Co-Borrower

Freddie Mac Form 65   07/05

## IV. EMPLOYMENT INFORMATION

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Yrs. on this job | Name & Address of Employer ☐ Self Employed | Yrs. on this job |
| S.D.S. | 4 yr(s) | | |
| 8954 RIO SAN DIEGO DR#110 | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |
| SAN DIEGO, CA 92107 | 6 | | |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| COMPUTER TECH | 619-682-7290 | | |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,351.50 | $ | $ 5,351.50 | Rent | $ | |
| Overtime | 489.00 | | 489.00 | First Mortgage (P&I) | 940.00 | $ 1,626.67 |
| Bonuses | 630.00 | | 630.00 | Other Financing (P&I) | 203.00 | 421.17 |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | 287.41 | 287.41 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | 128.00 | 128.00 |
| | | | | Other: | | |
| Total | $ 6,470.50 | $ | $ 6,470.50 | Total | $ 1,558.41 | $ 2,463.25 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| Describe Other Income | *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | |
|---|---|---|
| B/C | | Monthly Amount |
| | | $ |
| | | |
| | | |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp2.frm 09/05

Page 2 of 5

Borrower _____
Co-Borrower _____

Freddie Mac Form 65   07/05

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed ☑ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| *List checking and savings accounts below* | | Name and address of Company **DOWNEY S&L** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union **US BANK** | | | | |
| | | Acct. no.  9040707085 | *    (940) | 252,609 |
| Acct. no. 165100505578 | $    10,497 | Name and address of Company **WASHINGTON MUTUAL** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no.  100000000062659 | *    (203) | 30,295 |
| Acct. no. | $ | Name and address of Company **CHASE** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no.  411816500657 | 10 /(R) | 50 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) **SCOTTRADE** | $    5,777 | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $    16,274 | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $    320,000 | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) **PERSONAL PROPERTY** | $    50,000 | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $    10 | |
| **Total Assets a.** | $    386,274 | **Net Worth (a minus b) ➤** $    103,320 | **Total Liabilities b.** | $    282,954 |

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 4255 33RD ST#6 SAN DIEGO, CA 92104 | CONDO | $  320,000 | $  274,500 | $ | $  1,143 | $  413 | $ |
| | | $ | $ | $ | $ | $ | $ |
| Totals | | $  320,000 | $  274,500 | $ | $  1,143 | $  413 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

Borrower _____

Co-Borrower _____

Freddie Mac Form 65   07/05

## VII. DETAILS OF TRANSACTION

| | | VIII. DECLARATIONS | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| a. Purchase price | $ | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | Yes | No | Yes | No |
| b. Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | | ☐ | ☑ | ☐ | ☐ |
| c. Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | | ☐ | ☑ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | 282,904.00 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | ☐ | ☑ | ☐ | ☐ |
| e. Estimated prepaid items | 2,120.31 | | | | | | |
| f. Estimated closing costs | 11,886.00 | d. Are you a party to a lawsuit? | | ☐ | ☑ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | ☐ | ☑ | ☐ | . |
| h. Discount (if Borrower will pay) | | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | | |
| i. Total costs (add items a through h) | 296,910.31 | | | | | | |
| j. Subordinate financing | 47,000.00 | | | | | | |
| k. Borrower's closing costs paid by Seller | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | ☐ | ☑ | ☐ | ☐ |
| l. Other Credits (explain) | | | | | | | |
| | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | ☐ | ☑ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | | ☐ | ☑ | ☐ | ☐ |
| | | i. Are you a co-maker or endorser on a note? | | ☐ | ☑ | ☐ | ☐ |
| New 2nd Mtg Closing Costs | -251.40 | j. Are you a U. S. citizen? | | ☑ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | | ☐ | ☑ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 256,000.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | ☑ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | | ☑ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | 256,000.00 | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | PR | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -5,838.29 | (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 1/25/07 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander   ☑ White | | ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: | ☐ Female   ☑ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) CHRISTINA SMITH | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Signature | GOLDEN VALLEY LENDING GROUP 830 E.VISTA WAY#119 VISTA, CA 92084 (P) 760-407-1717 (F) 760-407-1722 |
| | Interviewer's Phone Number (incl. area code) 760-407-1717 | Date 1/29/07 |

# ATTACHMENT "M"

## DISCLOSURE OF CREDIT SCORE INFORMATION

| Borrower Name:<br>Michael Burrows | Lender:<br>Opteum Financial Services, LLC - San Diego<br>Operations Center |
|---|---|
| Property Address:<br>4255 33RD Street #6<br>San Diego, CA 92104 | 2020 Camino Del Rio North, Suite 300<br>San Diego, CA 92108 |
| | Date:<br>January 11, 2007 |

We are providing the following credit score information in connection with your loan application.

| Credit Score Provider | Experian<br>P.O. Box 2002<br>Allen, TX 75013<br>1-888-397-3742 | Equifax<br>P.O. Box 740241<br>Atlanta, GA 30374<br>1-800-685-1111 | Trans Union<br>P.O. Box 4000<br>Chester, PA 19016<br>1-866-887-2673 |
|---|---|---|---|
| Current/Most Recent Credit Score | 767 | 795 | 767 |
| Key Factors Adversely Affecting Score | 1. Length of time revolving accounts have been established<br><br>2. Proportion of balance to high credit on banking revolving or all revolving accounts<br><br>3. Too many inquiries last 12 months | 1. Amount owed on revolving accounts is too high<br><br>2. Too many inquiries last 12 months | 1. Amount owed on accounts is too high<br><br>2. Length of time accounts have been established<br><br>3. Proportion of balance to high credit on banking revolving or all revolving accounts<br><br>4. Too many inquiries last 12 months |
| Range of Possible Credit Scores | 340 - 820 | 300 - 850 | 400 - 925 |
| Date of Credit Score | 01/17/2007 | 01/17/2007 | 01/17/2007 |



*LND1000*

# ATTACHMENT "N"

# SCHEDULE OF REAL ESTATE OWNED

Under status of property indicate: S - Sold; PS - Pending Sale; R - Rental being held for income

| NAME AND ADDRESS OF LENDER ON MORTGAGE PROPERTY ADDRESS | STATUS (S, PS, R) | TYPE OF PROPERTY | LOAN NUMBER | MARKET VALUE | BALANCE OF MORTGAGES | (1) MONTHLY RENTAL INCOME | *(2) MONTHLY TAXES & INSURANCE | (3) MONTHLY MORTGAGE PAYMENT | NET RENTAL INCOME (1)-(2&3) |
|---|---|---|---|---|---|---|---|---|---|
| I | | | | | | | | | |
| DOWNEY SAVINGS & LOA.<br>4255 33RD Street #6<br>San Diego, CA 92104 | | Condomini | 9040707085 | 320000.00 | 250929.00 | 0.00 | 128.00 | 940.00 | 0.00 |
| II | | | | | | | | | |
| WASHINGTON MUTUAL BA<br>PO BOX 44118 JACKSONVILLE FL<br>32231<br>4255 33RD Street #6<br>San Diego, CA 92104 | | Condomini | 10010000000062659 | | 29,899.00 | | | 210.00 | |
| III | | | | | | | | | |
| IV | | | | | | | | | |
| V | | | | | | | | | |
| VI | | | | | | | | | |
| | | | TOTALS | 320000.00 | 280828.00 | 0.00 | 128.00 | 1,150.00 | 0.00 |

* If units, include monthly maintenance costs

SIGNED _____   DATE _____

SIGNED _____Michael Barrows_____   DATE _1/25/07_

SIGNED _____   DATE _____

935 (9112)   1707104080

VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291



# <u>ATTACHMENT</u> "**O**"

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**Lender:** Downey Savings and Loan Association, F.A.
**3501 Jamboree Road, Newport Beach, CA  92660**

**Application / Loan Number:** 9040707085          **Re:** MICHAEL BURROWS

**Date:** April 21, 2004

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCE | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 4.757 % | $232,363.94 | $242,708.17 | $475,072.11 |

**PAYMENTS:** Your payment schedule will be as follows -

| Number of Payments | Amount of Payments | | When Payments Are Due |
|---|---|---|---|
| 1 | $813.14 | Monthly Beginning: | 06/01/2004 |
| 11 | $813.14 | | 07/01/2004 |
| 12 | $874.13 | | 06/01/2005 |
| 12 | $939.69 | | 06/01/2006 |
| 12 | $1,010.17 | | 06/01/2007 |
| 12 | $1,085.93 | | 06/01/2008 |
| 299 | $1,394.67 | | 06/01/2009 |
| 1 | $1,389.06 | | 05/01/2034 |

| Index Type COFI | Current Index Rate 1.841 |
|---|---|

☒ Your loan contains a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

**INSURANCE:** The following insurance is required to obtain credit.     ☒ Property Insurance          ☐ Flood Insurance
You may obtain the insurance from anyone you want that is acceptable to the creditor.

**SECURITY:** You are giving a security interest in :
  4255 33RD STREET #6, SAN DIEGO, CA  92104

**LATE CHARGE:** If a payment is more than 15 days late, you will be charged 6.0000 % of the overdue payment.

**PREPAYMENT:** If you pay off early, you
☒ may     ☐ will not have to pay a penalty.
☐ may     ☒ will not be entitled to a refund of part of the finance charge.

**ASSUMPTION:** Someone buying your property
☐ may     ☒ may, subject to conditions     ☐ may not assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
☒  (e) means an estimate

See attached Good Faith Estimate for settlement charges.
The undersigned acknowledge receiving and reading a completed copy of the disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

| | |
|---|---|
| MICHAEL BURROWS                    (Date) | (D |
| (Date) | (C |
| (Date) | (C |
| (Date) | (D |

NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.          REZ.UFF (02/23/04) CR12858 VC

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Burrows, Michael J.

**DEFENDANTS**

Orchid Island TRS, LLC successor name to OPTEUM Financial Services; Golden Valley Lending Group, Inc.; F107 MAC-Financial Services, LLC; Smith, Christine

FILED

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

~~San Diego County, CA~~  San Diego County

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)

(New Jersey) Bergen County

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Jonathan Kunniadi
The JK Law Firm, APC.
1150 Silverado Street, #216, La Jolla, CA 92037
(858) 551-0090

**ATTORNEYS (IF KNOWN)**

'07 CV 1567   BEN (WMc)

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- 1 U.S. Government Plaintiff
- 3 Federal Question [X] (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX)**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

(TILA) 15 U.S.C. § 1601 et seq. ; (RESPA) 12 U.S.C. § 2601 et seq.

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability / 362 Personal Injury-Medical Malpractice | 625 Drug Related Seizure of Property 21 USC881 | PROPERTY RIGHTS | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander / 365 Personal Injury - Product Liability | 630 Liquor Laws | 820 Copyrights | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment &Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability | 640 RR & Truck | 830 Patent | 460 Deportation |
| 151 Medicare Act | 340 Marine | 650 Airline Regs | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability / PERSONAL PROPERTY | 660 Occupational Safety/Health | SOCIAL SECURITY | 810 Selective Service |
| 153 Recovery of Overpayment of Veterans Benefits | 350 Motor Vehicle / 370 Other Fraud | 690 Other | 861 HIA (1395ff) | 850 Securities/Commodities Exchange |
| 160 Stockholders Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | LABOR | 862 Black Lung (923) | 875 Customer Challenge 12 USC |
| 190 Other Contract | 360 Other Personal Injury / 380 Other Personal Property Damage | 710 Fair Labor Standards Act | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| 195 Contract Product Liability | / 385 Property Damage Product Liability | 720 Labor/Mgmt. Relations | 864 SSID Title XVI | 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | 730 Labor/Mgmt. Reporting & Disclosure Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting / 510 Motions to Vacate Sentence Habeas Corpus | 740 Railway Labor Act | FEDERAL TAX SUITS | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment / 530 General | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/Accommodations / 535 Death Penalty | 791 Empl. Ret. Inc. Security Act | 871 IRS - Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Tort to Land | 444 Welfare / 540 Mandamus & Other | | | 950 Constitutionality of State |
| 245 Tort Product Liability | 440 Other Civil Rights / 550 Civil Rights | | | 890 Other Statutory Actions |
| 290 All Other Real Property | / 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

[X] 1 Original Proceeding  | 2 Removal from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multidistrict Litigation | 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23
DEMAND $ 200,000 / Injunction
Check YES only if demanded in complaint:
JURY DEMAND: [X] YES • NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**  JUDGE _____  Docket Number _____

DATE  8/9/07   SIGNATURE OF ATTORNEY OF RECORD

8/9/07 #350 #141299 KD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

BEN (WMc)

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 141299   — KD
* * C O P Y * *
August 09. 2007
10:34:46

### Civ Fil Non-Pris
USAO #.: CIVIL FILING 07CV1567
Judge..: ROGER T BENITEZ
Amount.:                    $350.00 CK
Check#.: PC 97

## Total—>   $350.00

FROM: BURROWS V. ORCHID ISLAND TRS.
      CIVIL FILING