UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL BURROWS, | ) | CASE NO. 07CV1567-BEN (WMC) |
| Plaintiff, | ) | |
| v. | ) | ORDER: |
| ORCHID ISLAND TRS, LLC; GOLDEN VALLEY LENDING CORP., INC.; CHRISTINE SMITH, | ) | (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND |
| Defendants. | ) | (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE |

**I. INTRODUCTION**

Plaintiff Michael Burrows ("Burrows" or "Plaintiff") filed this lawsuit on August 9, 2007. *See* Doc. No. 1. On September 21, 2007, Defendant Golden Valley Lending Group, Inc. ("Golden Valley") filed a Motion to Strike. *See* Doc. No. 12. On October 9, 2007, Defendant Christine R. Smith ("Smith") filed a Motion to dismiss and a Motion to Strike, which closely mirror Golden Valley's Motions. *See* Doc. Nos. 17, 18. Finally, on November 9, 2007 Defendant Orchid Island TRS, LLC ("Orchid") also filed a Motion to Dismiss and a Motion to Strike. *See* Doc. Nos. 31, 32.

Presently, these motions are pending before the Court. For the reasons that follow, the Court GRANTS Defendants' Motions in part and DENIES them in part.

1

## II. Factual and Procedural History

This case involves long and complex factual and procedural history. Plaintiff filed a Complaint with this Court on August 9, 2007. Plaintiff's Complaint contains fifteen causes of action. In his Complaint, Burrows alleges that Defendants engaged in predatory lending practices, falsified information on Plaintiff's loan application, and used bait-and-switch techniques to induce him to refinance and obtain a mortgage on his home at a higher interest rate, prepayment penalties, and duplicate closing fees.

Specifically, Plaintiff's Complaint states that Burrows purchased his home in 2004 for $295,000.00, obtaining first and second mortgages at 4.757% and 4% interest rates, respectively. At that time, Plaintiff's combined mortgage payments totaled $1,278.00. In 2007, Plaintiff received an advertising brochure from Defendants, "soliciting opportunities to refinance home loans and lower monthly mortgage payments." Plaintiff called the number on the brochure and spoke to Defendant Smith. Plaintiff informed Smith that he was only interested in refinancing if he could lower his monthly payments and obtain a 30-year fixed mortgage rate.

According to Plaintiff, Defendant Smith assured him she would help him secure a lower interest rate and a 30-year fixed mortgage. Soon after this conversation, Defendant Smith told Plaintiff that she "discovered the 'perfect' loan for him, that Plaintiff would receive $5,000.00 in cash as a rebate from the loan, and that a notary would be visiting Plaintiff's home the next day." Plaintiff complied with Smith's instructions and signed a loan application, which Smith had prepared for him.

After receiving a copy of his loan documents in the mail, however, Plaintiff discovered that he had entered into a 5-year negative amortization rate mortgage, at 7.94% interest rate, with prepayment penalties, and closing fees "amounting to more than $17,000, more than 5% of the value of the loan." Plaintiff's second mortgage on the new loan was at 10.36% interest rate.

Plaintiff alleges that he was unaware that he was actually refinancing at an interest rate that was higher than what he was paying before, and that he was only able to discover this fact after the right-to-cancel period on this new loan had expired. Plaintiff claims that Defendants Smith and Golden Valley were able to obtain a Yield Spread Premium in the amount of $2,880.00 by selling Plaintiff a 5-year negative amortization rate mortgage instead of the 30-year fixed mortgage he requested.

In his Complaint, Plaintiff also states that Defendant Smith instructed him to backdate his loan application. Smith further overstated Burrows' income on the application – doubling the amount of his $3,200-per-month income. The Good Faith Estimate, which Plaintiff received prior to closing on the loan, indicated that Plaintiff's monthly mortgage payments would be fixed at $1,798.65. After signing the loan documents provided to him by Smith, however, Plaintiff subsequently discovered that his new monthly mortgage payment was significantly higher than the one listed on the Good Faith Estimate – $2,481.81.

Initially, Plaintiff named four Defendants in this lawsuit: Smith, Golden Valley, NLC, and Orchid.[1] On January 24, 2008, however, Defendant First NLC Financial Services, LLC ("NLC"), filed a Notice of Automatic Stay due to pending bankruptcy proceedings. Doc. No. 44. On February 15, 2008, the Court stayed this action, upon determining that the Complaint against Defendant NLC is "inextricably interwoven" with Plaintiff's claims against the other Defendants, and the allegations overall "present[] common questions of law and fact, which can be resolved in one proceeding." *See*, *e.g.*, *Federal Life Ins. Co. (Mut.) v. First Financial Group of Texas, Inc.*, 3 B.R. 375, 376 (S.D. Tex. 1980). Thereafter, Plaintiff filed a Notice of Voluntary Dismissal, without prejudice, of Defendant NLC. Doc. No. 47. On February 29, 2008, the Court issued an Order lifting the stay. Doc. No. 50.

Presently pending before the Court are five motions: (1) Defendant Golden Valley's Motion to Strike; (2) Defendant Smith's Motion to Dismiss; (3) Defendant Smith's Motion to Strike; (4) Defendant Orchid's Motion to Dismiss; and (5) Defendant Orchid's Motion to Strike.

---

[1] According to Plaintiff, Defendant Smith was a "salesperson," who is an "agent and/or employee of the corporate Defendants." At the time of the events in question, Defendant Smith was apparently a mortgage broker, employed by Defendant Golden Valley – a brokerage firm. It further appears that Defendant NLC Financial Services also employed Smith (together with another broker, Mr. Mikkelsen, who is not a party to this action) at the same time. According to the Complaint, Mr. Mikkelson worked together with Defendant Smith in preparing Plaintiff's loan application. Finally, Defendant Orchid is a lender, which owns Plaintiff's loan. Orchid was previously registered under the name of "Opteum Financial Services," but it has changed its name and/or became a successor to Opteum prior to the filing of this action.

### III. DISCUSSION

**A. Standard of Review**

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). In deciding a motion to dismiss for failure to state a claim, the Court must accept all material allegations of the Complaint as true, "as well as all reasonable inferences to be drawn from them." *Navarro*, 250 F.3d at 732 (internal citations omitted). "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Weber v. Department of Veterans Affairs*, 512 F.3d 1178, 1181 (9th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974 (2007)).

"Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732 (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). Finally, the Court may strike from the pleadings "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

**B. Defendants' Motions to Dismiss or Strike a Claim for Emotional Distress Damages**

Defendants allege that Plaintiff cannot seek damages for intentional infliction of emotional distress in the absence of a physical injury. Defendants further claim that Plaintiff failed to show that Defendants' conduct was extreme and outrageous. Finally, Defendants argue that emotional distress damages are not allowed where the only injury to Plaintiff is economic in nature.

Although Defendants cite several California appellate courts' decisions in efforts to support this proposition, they fail to address a case, which appears to be controlling on this issue. Specifically, the California Supreme Court held in *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 579 (Cal. 1973), that "awards [for emotional distress] are not confined to cases where the mental suffering award was in addition to an award for personal injuries[.]" The *Gruenberg* court explained that "damages for mental distress have also been awarded in cases where the tortious conduct was an interference with property rights without any personal injuries apart from the mental

4

distress." *Id.*[2]  Furthermore, the *Gruenberg* decision clarified that, in such cases, it is not necessary to prove that the defendant's conduct was outrageous, or that the plaintiff's distress was severe. *See id.* at 580-81.

Defendants point to no controlling authority in this jurisdiction – and this Court found none – indicating that Plaintiff cannot bring a claim for emotional distress in this case.  Having reviewed the Complaint, the Court finds that Plaintiff asserted sufficient allegations to allow his claim for emotional distress damages to go forward.  The Court, therefore, DENIES Defendants' Motions to Dismiss and Motions to Strike Plaintiff's claim for emotional distress damages.  Furthermore, the Court DENIES as moot Defendant Orchid's Motion to Dismiss Plaintiff's Negligence claim.[3]

**C. Defendants' Motion to Strike a Claim for Punitive Damages**

Defendants Smith and Golden Valley further ask the Court to strike Plaintiff's request for punitive damages from the Complaint. *See* Doc. Nos. 12, at 3; 18-2, at 3.  First, Defendants incorrectly argue that the Court should strike Plaintiff's request for punitive damages because these damages are not available in a breach of contract action.  As Plaintiff correctly notes, however, he has not asserted a breach of contract claim against Defendants.

Second, Defendant Golden Valley claims it should not be liable for punitive damages because "Plaintiff has failed to show that any officer, director, or managing agent of Golden Valley committed, authorized or ratified any of the alleged conduct." *See* Doc. No. 12, at 9.  Section 3294 of the California Civil Code provides that an employer is not liable for punitive damages for the actions of its employees "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or

---

[2] Other decisions are in harmony with *Gruenberg*. *See*, *e.g.*, *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 799 (Cal. App. 4. Dist. 1992) (noting that, "in cases of intentional misrepresentation recovery for emotional distress need not be accompanied by physical injury"); *Jahn v. Brickey*, 168 Cal. App. 3d 399, 406 (Cal. App. 4. Dist. 1985) (citing *Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 433-34 (Cal. 1967)) (holding that "a plaintiff who as a result of a defendant's tortious conduct loses his property and suffers mental distress may recover not only for the pecuniary loss but also for his mental distress").

[3] As Defendant Orchid notes, its Motion to Dismiss the Negligence Claim is predicated on the Court's dismissal of the Plaintiff's claim for emotional distress damages.  Because the Court is allowing that claim to go forward, Orchid's Motion to Dismiss the Negligence Claim is now moot.

authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code 3294(b). Burrows claims in his Complaint that Golden Valley knew about Smith's actions; that Golden Valley targeted Plaintiff with deceptive advertising brochures; that it "conspired" with Smith to induce Plaintiff into refinancing on unfavorable terms; that it acted fraudulently; that Golden Valley authorized Smith's conduct while knowing about Smith's misrepresentations; that it received higher fees by giving Plaintiff a more expensive loan; and so forth. In short, the Court finds that the Complaint provides sufficient allegations to allow the punitive damages claim against Golden Valley to go forward.

Finally, Golden Valley misinterprets the pleading requirements by erroneously arguing that Plaintiff's Complaint must establish his entitlement to punitive damages by clear and convincing evidence at the *pleading stage*.[4] At this stage of the Complaint, however, the Court must "take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2000) (citing *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000)). Dismissal of the punitive damages claim is, therefore, improper. Likewise, the Court will not strike Plaintiff's punitive damages claim from the Complaint because it is not "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f).

California law allows recovery of punitive damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. Plaintiff's Complaint alleges, *inter alia*, that Defendant Golden Valley and Defendant Smith acted fraudulently, made various misrepresentations to Plaintiff, concealed pertinent information from Plaintiff, and breached their fiduciary duty. Plaintiff further claims that Defendants acted wilfully,

---

[4] Golden Valley argues that Plaintiff must show by "clear and convincing evidence," *at the pleading stage*, (1) that Defendants' actions justify punitive damages; and (2) that Golden Valley management knew about and ratified oppressive, malicious, or fraudulent conduct by its employees. Golden Valley's position is incorrect; furthermore, it misinterprets California cases, which addressed this requirement in a different context at the *summary judgment stage. See Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1118-19 (Cal. App. 2. Dist. 2001); *Rowe v. Superior Court*, 15 Cal. App. 4th 1711, 1724 (Cal. App. 2 Dist. 1993).

6

07cv01567 BEN (WMC)

fraudulently, in an oppressive manner, and with a conscious disregard of Plaintiff's rights. At this stage of the proceedings, therefore, the Court finds the factual allegations in the Complaint sufficient to allow the claim for punitive damages to go forward. Accordingly, the Court DENIES Defendants' Motion to Strike Plaintiff's punitive damages claim.

**D. Defendants' Motion to Strike Plaintiff's Request for Attorney's Fees**

Defendants Smith and Golden Valley also ask the Court to strike Plaintiff's request for attorney's fees from the Complaint. Defendants contend that Plaintiff cannot recover damages for the violations of California Business & Professions Code ("the UCL"), and that he cannot rely on section 1021.5 of California Code of Civil Procedure to recover attorney's fees.

In California, Plaintiffs claiming violations of the UCL are "generally limited to injunctive relief and restitution." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 179 (Cal. 1999) (citations omitted). However, in this case, Plaintiff relies on section 1021.5 of California Code of Civil Procedure, which provides that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." Cal. C. Civ. P. § 1021.5. Because Plaintiff may be able to recover attorney's fees pursuant to this section, the Court DENIES Defendants' Motion to Strike.

**E. Defendant Smith's Motion to Dismiss**

Defendant Smith seeks a dismissal for failure to state a claim. Specifically, Smith seeks dismissal of Plaintiff's: (1) Third Cause of Action for Violation of California Civil Code §§ 1920 and 1921; (2) Fourth Cause of Action for Violation of Unfair Competition Act, California Business and Professions Code § 17200; (3) Fifth Cause of Action for Violation of the False Advertising Act, California Business and Professions Code § 17500; and (4) Fifteenth Cause of Action for Intentional Infliction of Emotional Distress. *See* Doc. No. 17-2, at 2.

*1. The Third Cause of Action for Violations of California Civil Code §§ 1920 and 1921*

Plaintiff does not oppose the dismissal of the Third Cause of Action. *See* Doc. No. 24, at 2. Accordingly, the Court DISMISSES the Third Cause of Action from the Complaint.

*2. The Fourth and Fifth Causes of Action for Violations of California Business & Professions Code*

Defendant Smith argues that the Court should dismiss the Fourth and Fifth Causes of Action for Violations of California Business & Professions Code ("the UCL"), §§ 17200 and 17500 et seq. Specifically, Smith claims that Burrows failed to state the facts supporting these claims with sufficient particularity.  Smith relies on a 1993 decision noting that "[a] plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (Cal. App. 2. Dist. 1993) (citations omitted).  Nevertheless, Smith neglects to mention a 1998 California Supreme Court decision holding that, "contrary to the suggestion . . . that the court may require fact-specific pleading [in UCL claims], the well-settled rule is otherwise except in pleading fraud." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 46-47 (Cal. 1998).  It is, therefore, clear that Plaintiff does not have to plead the alleged UCL violations with particularity.

Moreover, unlike the plaintiff in *Khoury*, Burrows pled sufficient factual allegations to establish possible grounds for relief under the UCL.  Burrow's 40-page, 185-paragraph Complaint recounts numerous allegations against Defendant Smith, and the Fourth and Fifth Causes of Action specifically allege that Defendants implemented a predatory lending scheme, failed to provide Burrows with notices and disclosures, charged excessive fees, distributed illegal kickbacks, targeted Plaintiff with a deceptive advertisement flyer, and marketed services, which were "not as advertised." *See* Compl. ¶¶ 100-14.  Because the Court concludes that Plaintiff adequately pled a cause of action under the UCL, Smith's Motion to Dismiss the Fourth and Fifth Causes of Action is DENIED.

**F. Defendant Orchid's Motion to Dismiss[5]**

Defendant Orchid also filed a Motion to Dismiss for Failure to State a Claim, or, in the alternative, a Motion for a More Definite Statement.  For the reasons that follow, the Court GRANTS in part and DENIES in part Orchid's Motion to Dismiss.

---

[5] Defendant Orchid also filed a separate Motion to Strike, asking the Court to strike (1) Plaintiff's request for damages for emotional distress and (2) paragraphs 10-16 from the Complaint. *See* Doc. No. 30, at 3.  Plaintiff does not oppose Orchid's Motion to strike paragraphs 10-16 from the Complaint.  *See* Doc. No. 43, at 1.  Accordingly, these paragraphs are stricken.  Orchid's Motion to Strike Plaintiff's request for emotional distress damages is discussed in Part III.B of this Order.

### *1. The First Cause of Action for Violation of The Truth in Lending Act*

First, Orchid asks the Court to dismiss the First Cause of Action for Violation of The Truth in Lending Act. Orchid argues that "Burrows first attempted to cancel his loans nearly three weeks after his cancellation period expired, and the delay was caused by Burrows's own failure to read the disclosure documents he received." Orchid further claims that there is no evidence that Burrows can return the loan proceeds upon rescission. Orchid urges the Court to dismiss the First Cause of Action on these grounds.

Nevertheless, Plaintiff pled sufficient allegations allowing him to proceed with this claim. According to the Complaint, Defendants' actions or misrepresentations may have prevented Burrows from canceling his loans in a timely manner. The Complaint states that Burrows was unaware of his right to cancel the loans and did not discover the document containing this information in time because Defendants: (1) had mailed it to the incorrect address; and (2) failed to provide Burrows with a copy at signing. Furthermore, in light of the circumstances of this case, it is unreasonable to require Plaintiff to demonstrate, at this stage of the litigation, that he can return the loan proceeds. This Court will not do so. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172-73 (9th Cir. 2003) (noting that the court has discretion in deciding whether to impose conditions on rescission of the loan proceeds). Ordering Plaintiff – who is shouldering the responsibility of paying the mortgage in question – to demonstrate he can immediately return the loan proceeds would effectively deprive him of an opportunity to seek relief. Clearly, Burrows can try to sell or refinance the property with another lender, should it become necessary to return loan proceeds to Orchid. *See id.* at 1173. For all these reasons, the Court DENIES Orchid's Motion to Dismiss this claim.

### *2. The Seventh, Eighth, and Ninth Causes of Action for Misrepresentation and Concealment*

Second, Orchid asked the Court to dismiss Burrows' claims for Negligent Misrepresentation, Intentional Misrepresentation, and Concealment. The Court agrees that Plaintiff failed to plead facts sufficient to satisfy the elements of these claims. The allegations in the Complaint are currently insufficient to support these claims against Defendant Orchid, and the Complaint, in fact, indicates that it was Defendant Smith, not Orchid, who made misrepresentations to Plaintiff.

In sum, the Complaint contains no factual assertions suggesting that: (1) Orchid owed a duty to disclose to Plaintiff; or (2) Orchid made affirmative representations to Plaintiff at the time of closing; or (3) there was conspiracy between Orchid and other Defendants. *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 745 (Cal. App. 1 Dist. 2007) ("An essential element of cause[] of action for concealment is duty."); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 233 (Cal. App. 2 Dist. 2007) (To establish a misrepresentation claim, "a positive assertion is required"); *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("[A] plaintiff must plead, at a minimum, the basic elements of a civil conspiracy[.]").

Therefore, the Court DISMISSES the Seventh, Eighth, and Ninth Causes of Action as to Defendant Orchid only. Plaintiff has sixty days to amend his Complaint to allege facts sufficient to support his misrepresentation and concealment claims against Orchid, if he wishes to do so.

The Court has examined, considered, and adjudicated all of the Motions filed by all the Defendants in this action. The Court grants Plaintiff leave to amend for limited purposes of adding factual allegations against Defendant Orchid with regard to three causes of action. Consequently, if Plaintiff amends his Complaint with regard to these three claims, only Defendant Orchid may file a subsequent Motion to Dismiss for Failure to State a Claim, and it may do so with regard to these three claims only.

### 3. The Fourteenth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing

Third, Orchid asks the Court to dismiss the Fourteenth Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing. Orchid claims that Plaintiff cannot assert this claim against a lender because lenders usually do not owe a duty of good faith and fair dealing to the borrowers. *See* Doc. No. 31, at 13 (citing *Kim v. Sumitomo Bank*, 17 Cal. App. 4th 974, 979 (Cal. App. 2. Dist. 1993)).

Nevertheless – as Orchid appears to acknowledge in its Motion – there are circumstances in which a lender *may* owe a duty of good faith to the borrower. These circumstances include instances where a lender could reasonably foresee that its actions would cause the borrower to suffer injury. *See Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1098 (Cal. App. 3 Dist. 1991). In this case, Borrows alleges, *inter alia*, that Orchid: (1) approved his loan despite

knowing the information on the loan application to be inaccurate; (2) overcharged Burrows in various fees; and (3) refused to cancel Burrows' loan despite Burrows reasonable explanation for his inability to cancel within the allowed time period. At the pleading stage, these allegations are sufficient to permit Burrows to proceed with this claim against Orchid.

In *Dreyfuss v. Union Bank of California*, 24 Cal. 4th 400, 413-14 (Cal. 2000), the California Supreme Court allowed the loan burrowers to assert a claim for a breach of "implied covenant of good faith and fair dealing" against the bank after the bank foreclosed on their property. Although the court did not specifically discuss the issue of duty, this decision offers further guidance in finding that, in California, lenders may owe a duty of good faith to the borrowers. *See id.*

Other California decisions further suggest that borrowers can assert a claim for breach of duty of good faith and fair dealing against lenders. As one court explains, "[i]n California, the test for determining whether a financial institution owes a duty of care to a borrower-client 'involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.'" *See, e.g.*, *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1098 (Cal. App. 3 Dist. 1991) (citing various cases). Because – based on the allegations in the Complaint – it is possible for Plaintiff to prove these elements, the Court DENIES Orchid's Motion to Dismiss the Fourteenth Cause of Action.

### *4. The Sixth and Tenth Causes of Action for Fraud*

Orchid further argues that the Court should dismiss Plaintiff's Sixth and Tenth Causes of Action for Constructive Fraud and Fraud on the Public for failure to plead with particularity. However, upon closer review, the Court has determined that Plaintiff did not bring these claims against Defendant Orchid. Because the remaining Defendants did not ask for a dismissal of these claims, and because Orchid did not clearly ascertain its basis for seeking dismissal of allegations of fraud from the Complaint, the Court DENIES Orchid's Motion to Dismiss these claims.

## IV. CONCLUSION

For all the reasons above, the Court DISMISSES the Third Cause of Action as to all Defendants, without leave to amend. The Court further strikes paragraphs 10-16 from the Complaint. The Seventh, Eighth, and Ninth Causes of Action are DISMISSED as to Defendant Orchid, with leave to amend. Plaintiff has sixty days from the date of this Order to amend the Seventh, Eights, and Ninth Causes of Action, if he wishes to do so. If Plaintiff amends his Complaint, the Court will only entertain a Motion to Dismiss from Defendant Orchid, with regard to these three claims only.

The Court DENIES Orchid's Motion to Dismiss the First, Sixth, Tenth, and Fourteenth Causes of Action. The Court also DENIES as moot Orchid's Motion to Dismiss Plaintiff's Negligence claim. Furthermore, the Court DENIES Smith's Motion to Dismiss the Fourth and Fifth causes of action. Orchid's Motion for a More Definite Statement is also DENIED as moot. Finally, the Court DENIES Defendants' Motions to Strike and Motions to Dismiss Plaintiff's emotional distress claim and Plaintiff's request for compensatory damages, punitive damages, and attorney's fees.

IT IS SO ORDERED

DATED: March 18, 2008

Hon. Roger T. Benitez
United States District Judge